35-08/MEU/SL
FREEHILL HOGAN & MAHAR, LLP
Attorneys for Defendant
AYRES SHIPPING INC.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Michael E. Unger (MU 0045)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

PAKRI TANKERS OU,

**08 Civ. 2424 (GBD)**

Plaintiff,

-against-

**COUNTERCLAIM**

AYRES SHIPPING INC., LASKARIDIS
SHIPPING CO. LTD., LAVINIA CORP.
and RIGA TRANSPORT FLEET,

Defendant.

------------------------------------------------------------------------x

Defendant AYRES SHIPPING INC. (hereinafter "AYRES"), through its attorneys

Freehill, Hogan & Mahar, LLP, for its counterclaim, alleges upon information and belief as

follows:

### AS FOR ITS COUNTERCLAIM AGAINST PLAINTIFF PAKRI TANKERS OU, DEFENDANT AYRES SHIPPING INC. ALLEGES UPON INFORMATION AND BELIEF :

1.    On or about January 19, 2007, PAKRI, as charterer, entered into a maritime

contract of charter party with AYRES, as owner of the M/T FORTUNE, for the charter of said

vessel for a period of two years plus or minus thirty (30) days in charterer's option at an agreed

daily hire rate of $13,000 per day.

2.    On May 25, 2007, AYRES duly delivered the M/T FORTUNE into the service of PAKRI and performed all of its obligations under the charter.

3.    Six months later, in November 2007, PAKRI commissioned a surveyor to inspect the vessel. The unqualified and inexperienced surveyor produced a report which falsely denoted several alleged defects or deficiencies with the vessel.

4.    Shortly prior to the inspection by PAKRI's surveyor, the vessel had passed the Chemical Distribution Institute inspection, which is the most rigorous independent trading inspection for vessels of this kind.

5.    AYRES has also recently had the vessel inspected by expert engineer Mr. Lindsay Gordon of Gordon Marine, London, who has concluded there is no substance to the findings by PAKRI's surveyor.

6.    On the basis of its surveyor's report, PAKRI falsely alleged that AYRES has failed to exercise due diligence to maintain or restore the vessel as required under the charter party.

7.    In repudiatory breach of the charter, on December 27, 2007, PAKRI notified AYRES of its intention to redeliver the vessel prematurely, and refused and/or otherwise failed to pay hire for use of the vessel after that date.

8.    On December 31, 2007, AYRES accepted PAKRI's repudiatory breach and terminated the charter without prejudice to AYRES' right to claim damages.

9.    At the time of the acceptance of PAKRI's breach as repudiatory the vessel was located at Rouen Roads (France).

10.    In an effort to mitigate its damages flowing from PAKRI's breach, AYRES entered into a fixture with non-party O.W. Bunker & Trading A/S pursuant to a charter party

dated 17 January 2008 for a voyage from Copenhagen to 1-2 places offshore West Africa to carry a cargo of clean petroleum products.

11.    In order to perform the voyage the vessel was required to sail from Rouen Roads (France) ,where she was located at the time of acceptance of PAKRI's breach as repudiatory, to Copenhagen where she arrived on 21st January 2008.

12.    PAKRI had paid hire up to 28th December 2007.

13.    From 28th December 2007 until 21st January 2008 the vessel earned no income resulting in a loss to AYRES in the sum of $312,000 (24 days at $13,000/day as per PAKRI charter).

14.    The vessel arrived at Copenhagen on 21st January 2008 and commenced performance of the charter with O.W. Bunker.

15.    The vessel completed discharging under the charter with O.W Bunker on 21st February 2008. The voyage was performed without any allegation or protest by Charterers O.W. Bunker as to the vessel's condition.

16.    AYRES earned net freight in the sum of $623,420.64 and incurred expenses in performing the voyage in the sum of $384,781.00 for a net profit of $238,639.64, representing a daily hire rate of $12,457.48.

17.    Despite its efforts to mitigate its damages via the charter with O.W. Bunker, AYRES suffered a loss in the sum of $16,275.60 for the period from 21st January to 21st February 2008 (the difference between the $13,000/day rate under the PAKRI charter and the $12,457.48 rate realized under the O.W. Bunker charter times 30 days).

18.    In a further effort to mitigate its damages, AYRES subsequently entered into a charter party with non-party Gateway International Shipping S.A. dated February 20, 2008 with a laycan of February 23-25, 2008 for delivery off Cotonou.

19.    The charter with Gateway is for a period of 30 days with options on the part of Gateway to extend the charter for two successive periods of 30 days each (3 days more or less each period at Gateway's option), to be followed by a period of 3 months (plus or minus 10 days) with 3 further periods of 3 months each at Gateway's option with all periods at the daily hire rate of $13,500 per day.

20.    AYRES has performed the first 30 days under the charter with Gateway and Gateway has exercised its option for a further 30 day period. There has been no indication from Gateway that it intends to continue to charter the vessel beyond April 2008. The voyage was performed without any allegation or protest by Charterers Gateway as to the vessel's condition.

21.    If the charter with Gateway is completed in two months as from her laycan 23-25 February 2008, or in April 2008, then AYRES will have 13 months of "unknown" fixtures or further substitute charters as he charter with PAKRI would have terminated in May 2008.

22.    In January 2008, AYRES obtained from various brokers advice on the market rate for like vessels of about $10,500/day. Another tanker under Riga Transport Fleet management was also offered a rate of $10,500/day by brokers and charterers.

23.    The difference between the daily rate under the PAKRI charter ($13,000/day) and this indication ($10,500) is $2,500/day.

24.    Applying the $10,500/day rate for the remaining time under the PAKRI charter (395 days) at $2,500/day yields a loss to AYRES of $987,500 as best as can presently be estimated.

25.     Also in breach of the charter, PAKRI failed and/or otherwise refused to pay for bunkers that were supplied to the vessel for PAKRI's benefit and for which PAKRI was responsible to pay the bunker suppliers under the terms of the charter party in the total amount of US$399,581.07 (US$ 25,000 + US$ 269,594.19 + US$ 104,986.88).  Consequently, the bunkers suppliers have now turned to and demanded payment from AYRES to recover for PAKRI's non-payment.

26.     In further breach of the charter, PAKRI has failed and/or otherwise refused to pay for the brokers' commission in the amount of $9,750, the fresh water supplied to the vessel in the amount of $880 and the tank cleaning in the amount of $1,600.

27.     In breach of the charter, PAKRI has failed and/or otherwise refused to pay for the costs of additional tugs at Seville, Spain in the amount of Euro 13,000 (US$ 18,000).

28.     In all, the damages which AYRES has sustained as a result of the breaches by PAKRI are:

i.      Loss of $312,000.00 from 28 December, 2007 (last date hire was paid by PAKRI) until 21 January, 2008 (arrival Copenhagen under the O.W. Bunker charter);

ii.     Loss of $_16, 275.60_in performing the O.W. Bunker & Trading charter;

iii.    Projected future loss of $987,500 following conclusion of the Gateway charter;

iv.     Bunkers supplied to the vessel but not paid for by PAKRI in the sum of $399,581.07;

v.      Commissions $9,750;

vi.     Water $880;

vii.    Tank cleaning $1,600;

viii.   Tugs at Seville $18,000

for a total amount of US$**1,745,586.67** none of which has been paid by PAKRI despite due demand.

29.     In further breach of the charter and notwithstanding its repudiation of the charter, based on the false allegations in its surveyor's report, PAKRI has improperly claimed damages from AYRES in the principal sum of $3,074,987.40 for items outlined in its complaint along with interest thereon at 7% compounded per annum for two (2) years in the sum of $430,498.24 and arbitration costs and attorneys' fees of $300,000 for a total claim of **$3,805,485.60**.

30.     In an attempt to resolve PAKRI's claims amicably and avoid the arrest of the M/T FORTUNE and/or the attachment of its assets, AYRES offered to deposit the sum of $220,000.00 representing the amounts of PAKRI's claims except for claimed lost profits, into an interest-bearing escrow account pending resolution. PAKRI refused to accept this offer.

31.     Instead PAKRI commenced Rule B proceedings against AYRES and three other companies, LASKARIDIS SHIPPING CO. LTD., LAVINIA CORP. and RIGA TRANSPORT FLEET, claimed by PAKRI to be the alter egos of AYRES and sought full security of $3.80 million from each of the named defendants.

32.     PAKRI succeeded in improperly restraining $3.79 million of funds belonging to LASKARIDIS and nearly $3.7 million belonging to LAVINIA.

33.     As a result of the adverse impact of the Rule B proceedings on AYRES' business which prevented it from being able to send or receive funds wire transferred through New York banks, as well as pressure being placed upon AYRES by LASKARIDIS and LAVINIA to resolve the security issue with PAKRI so that these innocent non-parties' funds would no longer be adversely effected by reason of PAKRI's efforts to obtain security for its claims allegedly

owing to a breach by AYRES; AYRES provided a bond to PAKRI for the sum of $3,749,086.40 as full security for PAKRI's claims in the London arbitration.

34.    The charter party provides for the application of English law and disputes between the parties to be resolved by arbitration in London, and AYRES specifically reserves its right to arbitrate the substantive matters at issue. Arbitration has been commenced and AYRES has/will file its claim and defense submissions.

35.    AYRES seeks counter-security pursuant to Rule E(7) for its claims made in arbitration in London under English law, as agreed by the parties.

36.    As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements, the cost of the arbitration, and interest, all of which constitutes a part of the AYRES' main claim and the amount sued for herein.

37.    AYRES estimates, as nearly as can presently be computed, that the legal expenses and costs of prosecuting its claims in London arbitration will be $300,000. Interest anticipated to be awarded is estimated to be $275,000 (calculated at the rate of 7% per annum compounded quarterly for a period of 2 years, the estimated time for completion of the proceedings in London).

38.    In all, the claim for which AYRES counter-security herein, as near as presently may be estimated, totals **$1,745,586.67**, no part of which has been paid by PAKRI although AYRES has obtained security in the sum of $222,452.03 pursuant to an action filed under Rule B against PAKRI under Index Number 08 CIV 554 (GBD) and $150,000 pursuant to the arrest of bunker (fuel/oil) claimed to belong to PAKRI aboard a vessel in Rotterdam on March 28, 2008. AYRES specifically reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure AYRES.

39.    The total amount sought to be secured by AYRES by way of an Order for counter-security is $1,373,134.64.

**WHEREFORE**, AYRES SHIPPING LTD. prays as follows:

a.    That the Court, in accordance with the provisions of Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims and/or section 8 of the Federal Arbitration Act, 9 U.S.C. §1 *et seq*., direct PAKRI TANKERS OU to post a bond in the usual form in the amount of $1,373,134.64 as security to respond in damages to the claim set forth in the Counterclaim.

b.    That the Court enter judgment against PAKRI TANKERS OU in the amount of any arbitration award obtained by AYRES SHIPPING LTD. against PAKRI TANKERS OU, plus interest, costs and attorneys' fees;

c.    That such judgment, to the extent possible, be satisfied by the security posted by PAKRI TANKERS OU; and

d.    That this Court grant AYRES SHIPPING LTD. such other, further and different relief as may be just, proper and equitable in the premises

Dated: New York, New York
      April 4, 2008

           FREEHILL HOGAN & MAHAR, LLP
           Attorneys for Defendant
           AYRES SHIPPING INC.

           By: _____
               Michael E. Unger (MU 0045)
               80 Pine Street
               New York, NY 10005
               (212) 425-1900

## ATTORNEY VERIFICATION

State of New York      )
                       ) ss.:
County of New York  )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1.      I am an associate with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Answer and Counterclaim and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client and/or by solicitors representing our client.

3.      The reason this verification is made by an attorney and not by the Defendant is because the Defendant is a foreign entity, none of whose officers are presently within this Judicial District.

_____
                                    Michael E. Unger

Sworn to before me this
4th day of April 2008

_____
        Notary Public

CLARE HENRY
Notary Public, State of New York
No. 01HE4831498
Qualified in Kings County
Certificate in New York County
Commission Expires October 31, 2009

NYDOCS1/301909.1                    9