35-08/MEU/SL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
PAKRI TANKERS OU,

                                                                                   08 CV 2424 (GBD)

                       Plaintiff,

     -against-

AYRES SHIPPING INC.,

                       Defendant.
------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR COUNTER-SECURITY
OR, IN THE ALTERNATIVE, FOR VACATURE OF PAKRI'S
ATTACHMENT AND DISMISSAL OF ITS CASE**

                                                       FREEHILL HOGAN & MAHAR, LLP
                                                       Attorneys for Ayres Shipping Inc.
                                                       80 Pine Street
                                                       New York, NY 10005
                                                       (212) 425-1900
                                                       (212) 425-1901 fax

<u>Of Counsel</u>
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/302165.1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... ii

PRELIMINARY STATEMENT ........................................................................ 1

BACKGROUND FACTS .................................................................................. 1

ARGUMENT

    POINT I

    PAKRI SHOULD BE ORDERDED TO PROVIDE
    COUNTER-SECURITY TO AYRES .................................................. 3

    POINT II

    PROCEEDINGS ON PAKRI'S ORIGINAL CLAIM
    MUST BE STAYED PENDING THE POSTING OF
    COUNTER-SECURITY ..................................................................... 8

    POINT III

    IN THE ALTERNATIVE, IF COUNTER-SECURITY IS
    NOT ORDERED, PAKRI'S ATTACHMENT SHOULD
    BE VACATED AND ITS COMPLAINT SHOULD BE
    DISMISSED WITH PREJUDICE ...................................................... 9

CONCLUSION ................................................................................................. 14

# TABLE OF AUTHORITIES

**Cases**

Americas Bulk Transport, Ltd. v. Volcano Shipping S.A., 2008 U.S. Dist.

LEXIS 4269 (Jan. 18, 2008) ..................................................................................5, 7

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006)......................11

Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113 (E.D.N.Y. 1998)......................10

The BEAUMONT, 8 F.2d 599 (4th Cir. 1925)..............................................................................7

Blake Maritime, Inc. v. Petrom S.A., 2005 U.S. Dist. LEXIS 26310

(S.D.N.Y. Oct. 31, 2005) ..............................................................................................11, 12

C Transport Panamax Ltd. v. Pacific Ocean Resources Ltd., 06 CIV 11413 (RJH)...................6, 8

Chiquita Int'l Ltd. v. M/V BOSSE, 518 F.Supp.2d 589 (S.D.N.Y. 2007) ..............................12, 13

Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A., 2007 U.S. Dist.

LEXIS 18827 (S.D.N.Y. Feb. 26, 2007).................................................................................6, 7

Cudworth v. The ST. CUTHBERT, 146 F.Supp. 857 (E.D.VA. 1957) ........................................7

Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist.

LEXIS 22409 (S.D.N.Y. Oct. 3, 2005)...................................................................................9

Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005

U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) ............................................................11

Dongbu Express Co. Ltd. v. Navios Corp., 944 F.Supp. 235 (S.D.N.Y. 1996) ...........................6

DS Bulk PTE, Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242

(S.D.N.Y. June 13, 2006).....................................................................................................11

Fednav Int'l Ltd. v. Sunwoo Merchant Marine Co. Ltd., 2007 U.S. Dist. LEXIS 79685

(S.D.N.Y. Oct. 18, 2007) .......................................................................................................5

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761

(S.D.N.Y. Oct. 25, 2005) ................................................................................................6, 7

Front Carriers, Ltd. v. Transfield ER Cape Ltd., 2007 U.S. Dist. LEXIS 85177

(S.D.N.Y. Nov. 19, 2007) ....................................................................................................5

Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341

(M.D.FL. 2001) ..................................................................................................................10

Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) ..............................................11

Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307 (2d Cir. 1970) ..........................................7

Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd., 2008 U.S. Dist. LEXIS 2438

(S.D.N.Y. Jan. 10, 2008) .....................................................................................................3

North Offshore A.S. v. Rolv Berg Drive A.S., 2007 U.S. Dist. LEXIS 87648

(S.D.N.Y. Nov. 29, 2007) ....................................................................................................3

Pancoast Trading S.A. v. Eurograni S.r.L., 2008 U.S. Dist. LEXIS 4224

(S.D.N.Y. Jan. 22, 2008) .................................................................................................5, 8

Partenreederei Wallschiff v. THE PIONEER, 120 F. Supp. 525 (E.D.MI. 1954) ..........................5

Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist.

LEXIS 60771 (S.D.N.Y. Aug. 28, 2006) ............................................................................13

Result Shipping v. Ferruzzi Trading USA, 56 F.3d 394 (2d Cir. 1995) .........................................4

Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390

(S.D.N.Y. 1995) ...................................................................................................................7

Salazar v. The Atlantic Sun, 881 F.2d 73 (3d Cir. 1989) ...............................................................10

Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfshiffahrt, 329 F.2d 538

(5th Cir. 1964) ....................................................................................................................7

Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957) .......................................................................6, 7

Starboard Venture Shipping, Inc. v. Casinomar Transp. Inc., 1993 U.S. Dist.

    LEXIS 15891 (S.D.N.Y. Nov. 9, 1993)..................................................................................6, 7

Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400 (5th Cir. 1987) ...............................................5, 6, 7

Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006).......10, 11

Verton Navigation Inc. v. Caribica Shipping Ltd., 1991 U.S. Dist. LEXIS 6722

    (S.D.N.Y. May 1, 1991)..........................................................................................................6

Voyager Shipholding Corp. v. Hanjin Shipping Co. Ltd., 2008 U.S. Dist. LEXIS 11045

    (S.D.N.Y. Feb. 13, 2008) ................................................................................................4, 5, 7

Washington-Southern Nav. Co. v. Balt. & Phila. Steamboat Co., 263 U.S. 629 (1924)..............5, 7

Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F.Supp. 1302 (W.D.WA 1982) .....................7

Zubrod v. Associated Metals & Minerals Trade Co., 243 F.Supp. 340 (E.D.PA. 1965) .................7

**PRELIMINARY STATEMENT**

This memorandum is submitted in support of the motion for counter-security pursuant to Rules E(7)(a) and E(2)(b) on behalf of Defendant AYRES SHIPPING INC. If counter-security is denied, then AYRES moves in the alternative for vacature of the attachment obtained by PAKRI TANKERS OU and dismissal of PAKRI's action.

**BACKGROUND FACTS**

The facts relevant to this motion are relatively simple and not in dispute. AYRES entered into a maritime contract of charter party for the vessel M/T FORTUNE with PAKRI. A dispute arose between the parties concerning the condition of the vessel, and other disputes between the parties followed. The charter party provides that all disputes are to be resolved by arbitration at London, England pursuant to English law. Arbitration has, in fact, been commenced between the parties.

In order to obtain security for its claims in the London arbitration, in January 2008 AYRES filed an action in this Court seeking security pursuant to Rule B, up to $2,210,824 for its claims. This relief was granted and AYRES restrained approximately $222,000 in property in which PAKRI had an attachable interest. Pursuant to a stipulation between the parties and an Order of this Court issued April 1, 2008, those funds were transferred to an escrow account in London, England, to abide the result of the arbitration.

In spite of its awareness of a recent case decided by Judge Leisure which held that it was *per se* improper for the defendant in one case to bring its own separate Rule B claim against its plaintiff (Judge Leisure held that the only proper manner of proceeding

for such security under the rules is to move for counter-security under Rule E), PAKRI nonetheless proceeded in such a manner, and -- complicating things still further - improperly restrained approximately triple the amount authorized under the Court's order of attachment by also restraining the full amount of security it sought of two of three alleged alter egos.[1]

In order to secure the prompt release of the cash that had been restrained and so as to be able to conduct its business without further interruption, AYRES provided PAKRI with a bond in the full amount of PAKRI's claim. That bond is, on its face, subject *inter alia* to AYRES's rights and defenses, including but not limited to the defense that the attachment that procured the bond was improper and should be vacated.

At a conference held on March 27, 2008, the parties appeared before the Court and were both instructed to attempt to resolve the security and counter-security issues in an effort to avoid motion practice. The parties' respective London counsel engaged in such discussions promptly thereafter and the parties' New York counsel entered into a stipulation (as set forth above) concerning the funds attached in AYRES's first-filed action. AYRES thereafter filed an answer and counterclaim in PAKRI's case and -- once the funds restrained by AYRES were confirmed as received by the escrow agent in London -- withdrew its own first-filed action.

AYRES has given security to PAKRI and has asserted a counter-claim arising out of the same transaction and occurrence as the events that are the subject of the Complaint in PAKRI's case. AYRES submits, therefore, that the conditions for requiring PAKRI to provide counter-security as set forth in Rule E(7) are all met and that PAKRI should

---

[1] AYRES denies the alter ego allegations and submits that the allegations made were legally insufficient to support attachment in any event.

NYDOCS1/302165.1                                      2

provide counter-security to AYRES. In the alternative event that such counter-security is not ordered, though, AYRES submits that on the basis that PAKRI's action was improper *ab initio*, its attachment should be vacated and its case dismissed with prejudice, following Judge Leisure's and Judge Keenan's recent decisions on point.

## ARGUMENT

### Point I

### PAKRI SHOULD BE ORDERDED TO PROVIDE COUNTER-SECURITY TO AYRES

Admiralty Rule B, under which PAKRI proceeded against AYRES, does not require the posting of counter-security in order to obtain an order of attachment in the first instance, but Admiralty Rule E(7)(a) provides that such counter-security **must be given** if the Defendant asserts a counterclaim.[2]  Admiralty Rule E(7)(a) provides as follows:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given unless the court directs otherwise.

Admiralty Rule E contains two separate provisions for the posting of counter-security. Admiralty Rule E(2) concerns counter-security for "costs" and Admiralty Rule E(7) concerns counter-security for counterclaims. Outside of their scope, the provisions are

---

[2] For more on the differences between Rule B security and Rule E countersecurity, *see* North Offshore A.S. v. Rolv Berg Drive A.S., 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y. Nov. 29, 2007) and Naias Marine S.A. v. Trans Pacific Carriers Co. Ltd., 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008).

NYDOCS1/302165.1                   3

worded differently, with Admiralty Rule E(2) directing that the Court "may" require the posting of counter-security while Admiralty Rule E(7) discusses the posting of counter-security in terms of "must". While there can be no doubt that under both provisions the Court may exercise its discretion, the different wording of the two provisions has been held to evince a stronger requirement that the Court compel the posting of counter-security for counterclaims. *See generally* Result Shipping v. Ferruzzi Trading USA, 56 F.3d 394, 399-401 (2d Cir. 1995).

The Court's *in personam* jurisdiction to require a plaintiff to provide Rule E(7) counter-security to a defendant stems from the plaintiff's voluntary appearance before the Court and voluntary invocation of the Admiralty Rules. Should the plaintiff fail to comply with an order to post counter-security, the Court has a wide arsenal of sanctions it may impose, not the least of which is vacature of a plaintiff's Rule B attachment. In Voyager Shipholding Corp. v. Hanjin Shipping Co. Ltd., 2008 U.S. Dist. LEXIS 11045, *13-14 (S.D.N.Y. Feb. 13, 2008), Judge Lynch held as follows:

> The Court has every expectation that Voyager, having invoked the authority of this Court, will comply with its orders. Should the Court's confidence be misplaced, it should be noted that enjoining Voyager from pressing its arbitration claims is not the only, or necessarily the most appropriate, remedy available to the Court. Voyager came to this Court in the first place not to litigate the merits of its disputes with Hanjin, but to obtain security for the claims it is pressing in another forum. That security is available to Voyager only on the terms provided in the Admiralty Rules, including the requirement that the claimant post countersecurity if appropriate. The Court has inherent power to enforce its orders against parties who have thus sought its aid. Should Voyager fail to comply with the countersecurity requirement of Rule E, which is a condition of the availability of the attachment provided by Rule B, the Court retains the power to vacate its order of

attachment, and will not hesitate to utilize that power if necessary.

Here, PAKRI has obtained security from AYRES in the full amount of its claim. AYRES has both given security[3] to PAKRI and has asserted a counterclaim in PAKRI's action which stems from the charter party relationship between the parties and the dispute over the condition of the vessel (and related disputes) that is the focus of the underlying action and the London arbitral proceedings. According to the plain wording of Admiralty Rule E(7)(a), PAKRI should now be required to provide counter-security in favor of AYRES in the full amount of the unsecured portion of AYRES's counterclaim of $1,000,682.61.[4] The awarding of counter-security is essentially automatic under such circumstances. See, e.g., Voyager Shipholding Corp. v. Hanjin Shipping Co. Ltd., 2008 U.S. Dist. LEXIS 11045 (S.D.N.Y. Feb. 13, 2008) (Lynch, J.); Pancoast Trading S.A. v. Eurograni S.r.L., 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. Jan. 22, 2008) (Lynch, J.); Americas Bulk Transport, Ltd. v. Volcano Shipping S.A., 2008 U.S. Dist. LEXIS 4269 (Jan. 18, 2008) (Cote, J.); Front Carriers, Ltd. v. Transfield ER Cape Ltd., 2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. Nov. 19, 2007) (Sullivan, J.); Fednav Int'l Ltd. v. Sunwoo Merchant Marine Co. Ltd., 2007 U.S. Dist. LEXIS 79685 (S.D.N.Y. Oct. 18, 2007)

---

[3] For the sake of clarity, the notion of "giving security" under the Rule does not necessarily imply any requirement of voluntary giving. The requirement of Rule E(7) that the defendant must "give security" in order to obtain counter-security for counterclaims is satisfied by the arrest or the attachment of that defendant's property. See Partenreederei Wallschiff v. THE PIONEER, 120 F. Supp. 525, 528-29 (E.D.MI. 1954) (holding that where the original proceeding is either in rem or for attachment, the restraint of property by arrest or attachment is one in which the defendant has "given security" under Rule 50, the predecessor of Rule E(7): see Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987).) The concept of "giving security" has been found not to impute any sense of a voluntary giving of such security, though of course such security, if given voluntarily, is also deemed "given". See generally Washington-Southern Nav. Co. v. Balt. & Phila. Steamboat Co., 263 U.S. 629 (1924).

[4] For the sake of clarity, AYRES's claim amount is $1,373,134.64 (reduced from the sum sought in Ayres Rule B complaint as Ayres was able to partially mitigate its losses), but it already secured $222,452.03 through its first-filed Rule B action in this Court and it also obtained security in Holland valued at $150,000. By subtracting the sums already secured from the amount of AYRES's claim, we obtain the amount that remains unsecured at present for which counter-security is sought via this application.

(Chin, J.); Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A., 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007) (Leisure, J.); Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005) (Lynch, J.); Dongbu Express Co. Ltd. v. Navios Corp., 944 F.Supp. 235 (S.D.N.Y. 1996) (Scheindlin, J.); Starboard Venture Shipping, Inc. v. Casinomar Transp. Inc., 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993) (Sotomayor, J.).

It is well-established that the purpose of Admiralty Rule E(7)(a) security is to place the parties "on an equality" as concerns security. *See, e.g.,* Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987). AYRES respectfully submits that since PAKRI is fully (100%) secured for its claims, the only way for this Court to maintain the equality is to require PAKRI to post counter-security in full in favor of AYRES. In a very recent (unpublished) decision from the bench on this very same issue in C Transport Panamax Ltd. v. Pacific Ocean Resources Ltd., 06 CIV 11413 (RJH), Judge Holwell expressly agreed. A copy of the C Transport transcript is annexed to the accompanying Unger Affirmation as Exhibit A. *See also* Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957) (holding that counter-security need not be limited to the amount of security obtained on the plaintiff's claim), and Verton Navigation Inc. v. Caribica Shipping Ltd., 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 1, 1991) (same).

The duty of the Court to require counter-security is only overcome if the cost of providing counter-security is so burdensome that it might prevent the plaintiff from bringing suit in the first place. Titan, 808 F.2d at 403-405. The Court is obligated to balance these principles by weighing "the importance of the security interest giving rise to the initial seizure, and the burden of posting countersecurity, against the potential

injustice of requiring the defendant-counterclaimant to post security without affording reciprocal protection." Id., 808 F.2d at 404. *See also* Voyager, 2008 U.S. Dist. LEXIS 11045 (S.D.N.Y. Feb. 13, 2008); Americas Bulk Transport, 2008 U.S. Dist. LEXIS 4269 (Jan. 18, 2008); Clipper, 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. Feb. 26, 2007); Finecom, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005); Starboard, 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. Nov. 9, 1993).

The Titan Court held that the extent of the Court's discretion, "although broad, is significantly cabined". Id., 808 F.2d at 403. Reviewing the cases in which counter-security was denied, the Titan Court found that the balance tips in favor of denying counter-security *only* when the plaintiff is financially unable to post counter-security (and not always, even under such circumstances), or provides some other good reason. Id., 808 F.2d at 403.

Insofar as financial inability to post counter-security is concerned, the cases in which courts have found such financial inability to exist are generally those in which individuals (usually seamen) are unable to post large bonds to counter-secure corporations' counterclaims,[5] or involve plaintiff corporations that are demonstrably insolvent.[6] Financial difficulties, however, do not automatically excuse the counter-security requirement. Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfshiffahrt, 329 F.2d 538 (5th Cir. 1964).[7] The underlying current behind the award of Rule E(7)(a)

---

[5] *See, e.g.*, Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629 (1924); Zubrod v. Associated Metals & Minerals Trade Co., 243 F.Supp. 340 (E.D.PA. 1965); Cudworth v. The ST. CUTHBERT, 146 F.Supp. 857 (E.D.VA. 1957).
[6] *See, e.g.*, The BEAUMONT, 8 F.2d 599 (4th Cir. 1925); Spriggs v. Hoffstot, 240 F.2d 76 (4th Cir. 1957); Whitney-Fidalgo Seafoods v. MISS TAMMY, 542 F.Supp. 1302 (W.D.WA 1982).
[7] To the extent that PAKRI may now claim financial inability to post counter-security in the amount requested, AYRES hereby respectfully requests an opportunity to take discovery of PAKRI's finances pursuant to Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307 (2d Cir. 1970) and Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390 (S.D.N.Y. 1995) (Haight, J.).

counter-security is the ideal of placing both sides to a suit on equal footing as regards security so that one party cannot gain an unfair advantage over the other merely by being the first to file suit. Pancoast, 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. Jan. 22, 2008); C Transport, 06 CIV 11413 (RJH) (copy of transcript attached as Exhibit A to Unger Affirmation).

Accordingly, since PAKRI is fully secured for its claims against AYRES, PAKRI should be required under Rule E(7)(a) to post counter-security in favor of AYRES in an amount sufficient to fully secure AYRES's counterclaims. Anything less would not keep the parties "on an equality".

**Point II**

**PROCEEDINGS ON PAKRI'S ORIGINAL CLAIM
MUST BE STAYED PENDING THE POSTING OF COUNTER-SECURITY**

PAKRI should be stayed from pursuing the merits of its original claim until AYRES's counterclaims and costs are fully secured. Rule E(7)(a)'s plain language, as set forth above, requires that "[p]roceedings on the original claim **must** be stayed until [counter-security] is given unless the court directs otherwise" (emphasis supplied).

In the matter presently before the Court, the merits of the dispute between PAKRI and AYRES were never intended to be pursued before this Court, so if PAKRI refuses or otherwise fails to comply with an Order directing it to post counter-security, staying proceedings only in the Southern District of New York would not punish PAKRI for such contempt – rather, it would only serve to continue to deprive AYRES of its counter-security without any penalty to PAKRI.

Rule E(7)(a) specifically provides that "proceedings over the original claim" are to be stayed if ordered counter-security is not given. The Rule contains no geographical limits as to where the proceedings would otherwise be going forward, even though it was clear to the drafters that the attachment and arrest rules might well be expected to relate to proceedings in which the merits would be decided in a forum other than the one in which security was obtained under the admiralty rules. *See* Advisory Committee Notes. Accordingly, this Court has the authority to order that a party subject to its *in personam* jurisdiction (such as PAKRI, which appeared voluntarily before this Court to obtain security from AYRES) not proceed with its original claim, regardless of where in the world such claim was proceeding on the merits. Such was the holding of the Court in Daeshin Shipping Co. Ltd. v. Meridian Bulk Carriers, Ltd., 2005 U.S. Dist. LEXIS 22409, *11 (S.D.N.Y. Oct. 3, 2005) (Buchwald, J.), in which the Court stayed the plaintiff from proceeding on its original claim in London arbitration pending the posting of counter-security by Daeshin.

AYRES respectfully submits that an order compelling PAKRI to post counter-security cannot be effectively enforced unless such order is accompanied by the stay required by Rule E(7)(a) prohibiting PAKRI from proceeding on the merits of its claim.

### Point III

**IN THE ALTERNATIVE, IF COUNTER-SECURITY IS NOT ORDERED, PAKRI'S ATTACHMENT SHOULD BE VACATED AND ITS COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE**

If AYRES obtains counter-security as requested above, then it is willing to forego its alternative application to vacate PAKRI's attachment pursuant to Rule E(4)(f). If

counter-security is denied, however, then AYRES moves in the alternative for vacatur of PAKRI's attachment and dismissal of its case with prejudice.

Rule E(4)(f) provides in pertinent part as follows:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief granted consistent with these rules.

This Rule not only places the burden of proof on PAKRI to establish why the attachment should be maintained, but it also includes an inference that the attachment should be vacated. A long line of consistent case law upholds the clear meaning of this rule, confirming that the burden of proof rests squarely with the attaching party to demonstrate why the attachment should be maintained, and that failing such proof results in vacature. Interpretations of Rule E(4)(f) are unanimous in holding that the burden of sustaining the attachment rests squarely with the attaching party. *See, e.g.*, Bay Casino, LLC v. M/V ROYAL EMPRESS, 5 F.Supp.2d 113, 125 (E.D.N.Y. 1998); Ullises Shipping Corp. v. FAL Shipping Co. Ltd., 415 F.Supp.2d 318 (S.D.N.Y. 2006).

Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends upon the issues in controversy. Salazar v. The Atlantic Sun, 881 F.2d 73, 79 (3d Cir. 1989); Linea Naviera de Cabotaje, C.A. v. Mar Caribe de Navigacion, C.A., 169 F.Supp.2d 1341, 1357-59 (M.D.FL. 2001) ("Rule E does not restrict review [at the post attachment hearing] to the adequacy of the allegations in the complaint, nor does it echo the standards of the initial attachment that conditions appear to exist; rather Rule E requires plaintiff…to show why the attachment should not be vacated").

The Second Circuit's decision in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 445 (2d Cir. 2006) sets forth a non-exclusive list of legal grounds for vacating a maritime attachment: (1) there is no valid maritime claim; (2) the defendant can be found within the district; (3) the defendant's property cannot be found within the district; (4) there is a maritime or statutory bar to the attachment; (5) the defendant is present in a convenient adjacent district; (6) the defendant is present in the district where the plaintiff is located; and (7) the plaintiff has already obtained sufficient security for a judgment. The Aqua Stoli Court also held that a District Court "must vacate an attachment if the plaintiff fails to sustain his burden of showing that he has satisfied the requirements of Rules B and E". Id.

The Second Circuit's holding is consistent with the *Advisory Committee Notes to Rule E* (1985 Amendment), which explained "Rule E(4)(f) is designed to…[guarantee] a prompt post-seizure hearing at which [the defendant] can attack the complaint, the arrest, the security demanded, ***or any other alleged deficiency in the proceedings***" (emphasis supplied). *See also* DS Bulk PTE, Ltd. v. Calder Seacarrier Corp., 2006 U.S. Dist. LEXIS 39242 (S.D.N.Y. June 13, 2 006) (vacating attachment that failed to meet all technical requirements); Deiulemar Compagnia di Navigazione S.p.A. v. Dabkomar Bulk Carriers Ltd., 2005 U.S. Dist. LEXIS 40783 (S.D.N.Y. Dec. 12, 2005) (same); Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519 (S.D.N.Y. 2006) ("[t]he plaintiff must demonstrate that…all technical requirements for effective attachment have been met"), *citing* Ulisses, *supra*, 415 F.Supp.2d at 322-23.

Notably, the Maersk Court also held that the Court has authority to vacate an attachment "upon a showing of '***any improper practice***'", *citing* Blake Maritime, Inc. v.

Petrom S.A., 2005 U.S. Dist. LEXIS 26310 (S.D.N.Y. Oct. 31, 2005) (emphasis supplied, quoting Southern District of New York Former Local Civil Rule 12 (1986)). This question of improper practice resulting in vacature brings us to a review of Judge Leisure's recent decision in Chiquita Int'l Ltd. v. M/V BOSSE, 518 F.Supp.2d 589 (S.D.N.Y. 2007).

In BOSSE, Chiquita filed an action against Bosse Shipping Ltd., seeking Rule B relief. Bosse had not been served with Chiquita's summons or complaint, and none of Bosse's property had been restrained, but Bosse was aware of Chiquita's filing. Relying *inter alia* on a literal reading of Rule 13, Bosse reasoned that since it had not yet been served with Chiquita's Complaint, it was permissible under the rules to file its own action seeking Rule B relief for its own claim (arising out of the same transaction) against Great White Fleet (Chiquita's co-Plaintiff in its action). Bosse attempted to mark its action as related, but the Clerk declined to mark it as such. Bosse advised Chief Judge Wood (who reviewed Bosse's Rule B application as Part I Judge) of the interconnectedness of the two actions, and the Chief Judge authorized Bosse's Rule B attachment. After Bosse restrained property belonging to Great White Fleet, Great White Fleet moved for vacature of Bosse's attachment, alleging that Bosse had engaged in an improper practice by failing to file a counterclaim in Chiquita's first-filed action. The Court (Leisure, J.) agreed with Great White Fleet, holding that Bosse had "abused the attachment process and took advantage of the *ex parte* nature of a Rule B order, despite [] knowledge that [its defendant] already was before the Southern District of New York in the related Chiquita action arising out of the same facts and between the same parties….Given Bosse's knowledge of the pending Chiquita action, seeking an *ex parte* order of attachment in the

Bosse action was an improper practice and showed a want of equity on the part of Bosse." Id. at 599. In a similar prior case, Judge Keenan ruled the same way. See Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist. LEXIS 60771 (S.D.N.Y. Aug. 28, 2006).

Here, PAKRI's actions are on all fours with BOSSE. PAKRI was aware of the prior action filed by AYRES,[8] and was aware that its claim arose out of the same transaction or occurrence. PAKRI nonetheless, and in the face of BOSSE and Rapture proceeded with its own *ex parte* application for a Rule B attachment nonetheless. PAKRI did not inform the Court of the relationship between the cases. The affidavit in support of Rule B that PAKRI submitted to the Court is devoid of any mention of the previously filed action by AYRES of which PAKRI was well aware. The only step PAKRI took to indicate the relationship between its case and the previously-filed case by AYRES was (purportedly) to have marked the cases as related on the civil cover sheet. PAKRI never provided the Court with a copy of the civil cover sheet, though, and did not advise the Court of the relatedness of the two actions. In light of the Court's findings in BOSSE (where the plaintiff was forthcoming to the Court about the relationship between the two cases) and Rapture, PAKRI's actions here give the appearance of outright duplicity. For the reasons set forth in BOSSE and Rapture, then, PAKRI's action should be viewed as knowingly improper and its attachment should therefore be vacated and its action dismissed with prejudice.

---

[8] Unlike BOSSE, however, in which Bosse's property had not been restrained, here funds of PAKRI had been restrained already and PAKRI was on notice of the previously-filed AYRES action both by reason of the restraint and the L.A.R. B.2 notice that was provided to it.

NYDOCS1/302165.1         13

## CONCLUSION

For all the foregoing reasons, the Court should order PAKRI to fully secure AYRES's counterclaim in the amount of $1,000,682.61 and should stay PAKRI from pursuing its main claim in the London arbitral proceedings until full counter-security is provided. In the alternative, PAKRI's attachment should be vacated and its case dismissed with prejudice.

Dated: New York, New York
    April 10, 2008

                              Respectfully submitted,

                              FREEHILL HOGAN & MAHAR, LLP
                              Attorneys for Ayres Shipping Inc.

By:                       _____
                              Michael E. Unger (MU 0045)
                              Lawrence J. Kahn (LK 5215)
                              80 Pine Street
                              New York, NY  10005
                              (212) 425-1900
                              (212) 425-1901 fax