UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

*ECF*

-------------------------------------------------------------------X

PAKRI TANKERS OU,

08 CV 2424 (GBD)

Plaintiff,

-against-

**DECLARATION IN OPPOSITION TO DEFENDANT'S MOTION**

AYRES SHIPPING INC.

Defendant.

-------------------------------------------------------------------X

I, DIMITRIJS SAVINS declare as follows:

1.    I am the Managing Director of Plaintiff PAKRI TANKERS OU and respectfully submit this Declaration in opposition to the conditional motion by AYRES SHIPPING INC. seeking counter-security from PAKRI TANKERS OU as security for certain claims it asserts against PAKRI TANKERS OU arising out of a time charter for the motor tanker FORTUNE which was entered into on January 19, 2007. AYRES did not deliver the vessel until May 25, 2007, however. Exerpts of the charter are attached as Exhibit 1.

2.    By way of background, PAKRI TANKERS OU is an Estonian company based in Tallinn, Estonia and has been in business as a charterer of tanker vessels since September 2005. PAKRI TANKERS owns no vessels. Currently 6 vessels are time chartered from unrelated third party owners. We pay daily charter hire to the owners. Our revenue comes from sub-charters to our customers who either pay on a daily hire basis or pay a negotiated freight per voyage. The goal of our operation is to make a profit by sub-chartering vessels for more money then we pay the owners in daily charter hire.

3.    AYRES has thus far attached $222,452.00 in banks in New York pursuant to its Rule B complaint. In addition, AYRES has arrested on three vessels fuel oil belonging to PAKRI with a total value of approximately $212,160.00. One of these arrests occurred in the Port of Rotterdam on March 28, 2008. As a result, the M/T Pakri Victory was delayed 7 days. The second occurred in the Port of Rotterdam on April 1, 2008. As a result, the M/T Brovig Wind was delayed 1day. The third occurred at the Port of Antwerp, Belgium on April 6, 2008. As a result, the M/T Pakri Glory was delayed 5days.

4.    AYRES purposefully arrests these assets of Pakri Victory on the eve of the weekend knowing full well that nothing can be done to challenge the arrest in court or to post security for the attached or arrested assets over the weekend. As a result, the vessels sit idle. PAKRI owes time charter hire to the vessel owners. PAKRI cannot pass along any of its costs or expenses to its sub-charterers because they are not at fault or in breach of the sub-charters in respect of the delays. Hus far, the costs to Pakri Tankers is about US$254,000 caused by Ayres tactics. In addition, the cash flow of PAKRI TANKERS is seriously impaired.

5.    The cash flow of PAKRI TANKERS has been halted entirely on April 11, 2008 by a lawsuit filed in the Courts of Estonia in which AYRES Shipping has obtained the permission of the Estonian Court to freeze all of PAKRI TANKERS bank accounts. In total, there are 3 bank accounts in the following banks:

Hansapank AS

Skandinaviska Enskilda Banken

Nordea Bank

The total amount of money that has been frozen is US$215,252

PAKRI's Estonian lawyers believe that it will take approximately one month, given the

pace of activity in Estonian courts, to have the freeze order vacated. In the meanwhile,

PAKRI has no cash flow.

6.      Accordingly, even if the Honorable Court in the Southern District of New

York were to order PAKRI to post counter-security, it has no access to its funds to

arrange counter-security because of the legal maneuvers of AYRES, in particular the

Estonian freeze order.

7.      Not only are PAKRI's cash deposits frozen, but it cannot do business

because it cannot pay charter hire to vessel owners, it cannot buy fuel and as a result, its

business has essentially come to a halt.

8.      PAKRI's past unwillingness to provide to AYRES the full amount of the

security demanded, over one million dollars in addition to those cash security already

posted, is that its claims are either meritless, inflated or contingent.

9.      Referring to paragraph 16 of the counter-claim, it is clear that AYRES

earned for the alleged thirty day period of the O.W. Bunker charter between January 21,

2008 and February 21, 2008 over $20,000.00 per day. This compares favorably to the

$13,000.00 per day that PAKRI paid to AYRES during the term of the time charter.

AYRES suffered no loss.

10.     In addition, in paragraph 20 and 21, AYRES discloses that the vessel is

currently chartered to Gateway at a favorable rate and may continue. AYRES has no

loss.

11.    In paragraph 24, AYRES quantifies what it claims are future lost revenues. However, these revenues are speculative and certainly are not out of pocket losses. AYRES is within its rights to make the claim. But since it is not out of pocket future lost earnings, AYRES has no right to cause PAKRI to be out of pocket these alleged future lost earnings. By asking Pakri to give security. AYRES may or may not suffer lost revenue in the future. But the fact of a loss and the amount are unknowable. To put it another way, PAKRI should not be responsible for securing damage claims which Ayres has not yet experienced.

12.    In paragraph 25, AYRES claims that PAKRI has not paid for $399,581.07 of fuel supplied to the vessel during the term of the time charter. This is false. Attached as Exhibit 2 are the invoices received from the bunker suppliers and evidence of payment. Moreover, when PAKRI redelivered the vessel FORTUNE on December 28, 2007 the vessel had US$109,784.30 of fuel aboard which AYRES should have paid for but has not.

13..    In paragraph 26, PAKRI is accused of not paying broker commissions which, pursuant to special clause VII of the time charter, are for the account of AYRES; not paying for fresh water which according to clause 6 of the charter is for the account of AYRES and not paying $1,600 for tank cleaning which is governed by clause 45 of the charter.

14.    As the Court is aware, the merits of this dispute will be decided by an arbitration tribunal in London. On February 20, 2008, PAKRI submitted its claim with supports to the arbitration tribunal. Since then, AYRES' solicitors have obtained two extensions of time to submit its claims and supports. Thus, while it is in everyone's

interest to move the arbitration proceedings forward as quickly as possible, AYRES is doing nothing to get to the merits. Rather it has dedicated itself to destroying Pakri Tankers. It is ironic that AYRES asks your Honor to stay Pakri from going forward with the arbitration because, in fact, AYRES has already stalled the arbitration.

WHEREFORE, since AYRES actions so far have essentially crippled the business of PAKRI and since AYRES claims are mostly either untrue or contingent upon future unknowable events, AYRES claim for counter-security should be rejected.

I declare under penalty of perjury of the laws of the United States of America that the foregoing statements are true and correct.

Executed:    Tallinn, Estonia
            April 17, 2008

DIMITRIJS SAVINSKI VAR ARELI

Code word for this Charter Party
"SHELLTIME 4"

WORKING COPY

*Issued December 1984*

CLARKSONS
ST. MAGNUS HOUSE
3 LOWER THAMES STREET
LONDON EC3R 6HE

# Time Charter Party

LONDON, *19th January*  ~~19~~ *2007*

IT IS THIS DAY AGREED between *Owners: Ayres Shipping Inc., Monrovia, Liberia, Commercial Managers: Lavinia Corp., Liberia or a wholy owned subsidiary of the Lavinia Group to be nominated, Technical Managers: Laskaridis Shipping Co. Ltd., Athens-Greece or Riga Transport Fleet, Riga, Latvia or a wholly owned subsidiary of the Lavinia Group to be nominated* | 1

of                              (hereinafter referred to as "Owners"), being owners of the  ........... | 2

good *Liberian flagged* vessel called *M.T. Fortune (ex Academic Semenov)* | 3

(hereinafter referred to as "the vessel") described as per Clause 1 hereof and *Pakri Tankers, Ou Toom Ruutli 12 - 10, Tallinn, Estonia* | 4

of                              (hereinafter referred to as "Charterers"): | 5

| | | |
|---|---|---|
| Description and | 1.  At the date of delivery *and throughout the duration of this charter* of the vessel under this charter – *See Special Provision I, attached herein* | 6 |
| Condition of Vessel | (a)  she shall be classed: - *AS PER OCIMF QUESTIONNAIRE* | 7 |
| | (b)  she shall be in every way fit to carry, *see Special Provisions, as attached* ~~crude petroleum and/or its products~~; | 8 |

(c)  she shall be tight, staunch, strong, in good order and condition, and in every way fit for the service, with her machinery, boilers, hull and other equipment (including but not limited to hull stress calculator and radar) in a good and efficient state: | 9, 10, 11
(d)  her tanks, valves and pipelines shall be oil-tight; | 12
(e)  she shall be in every way fitted for burning | 13

at sea - fueloil with a maximum viscosity of *see Special Provisions, as attached* Centistokes at 50 degrees Centigrade/any | 14
    commercial grade of fueloil ("ACGFO") for main propulsion, marine diesel oil/ACGFO for auxiliaries | 15, 16
in port - marine diesel oil/ACGFO for auxiliaries; | 17

(f)  she shall comply with the regulations in force so as to enable her to pass through the Suez and Panama Canals by day and night without delay; | 18, 19
(g)  she shall have on board all certificates, documents and equipment required from time to time by any applicable law to enable her to perform the charter service without delay; | 20, 21
(h)  she shall comply with the description in ~~Form B~~ *OCIMF questionnaire* appended hereto, provided however that if there | 22
is any conflict between the provisions of ~~Form B~~ *OCIMF questionnaire* and any other provision, including this Clause 1, of this charter | 23
such other provision shall govern. | 24

| | | |
|---|---|---|
| Shipboard Personnel and their Duties | 2.  (a)  At the date of delivery of the vessel under this charter | 25 |

(i)  she shall have a full and efficient complement of master, officers and crew for a vessel of her tonnage, who shall in any event be not less than the number required by the laws of the flag state and who shall be trained to operate the vessel and her equipment competently and safely; | 26, 27, 28
(ii)  all shipboard personnel shall hold valid certificates of competence in accordance with the requirements of the law of the flag state; | 29, 30
(iii)  all shipboard personnel shall be trained in accordance with the relevant provisions of the International Convention on Standards of Training, Certification and Watchkeeping for Seafarers, 1978 *and later amendments*; | 31, 32

(iv)  there shall be on board sufficient personnel with a good working knowledge of the English language to enable cargo operations at loading and discharging places to be carried out efficiently and safely and to enable communications between the vessel and those loading the vessel or accepting discharge therefrom to be carried out quickly and efficiently. | 33, 34, 35, 36
(b)  Owners guarantee that throughout the charter service the master shall with the vessel's officers and crew, unless otherwise ordered by Charterers, | 37, 38
(i)  prosecute all voyages with the utmost despatch; | 39
(ii)  render all customary assistance; and | 40
(iii)  load and discharge cargo as rapidly as possible when required by Charterers or their agents to do so, by night or by day, but always in accordance with the laws of the place of loading or discharging (as the case may be) and in each case in accordance with any applicable laws of the flag state. | 41, 42, 43



Savins Exh 1

(b) *The vessel always to discharge all or part of the cargo according to instructions from the Charterers or their agents.*

*Charterers will issue and sign a Letter of Indemnity valid for the whole period of this charter. Contents of such Letter of Indemnity to be in accordance with the OWNERS PANDI CLUB WORDING but without any bank guarantee, covering non availability of original Bills of Lading at discharge port(s) and/or change in discharge port(s). Charterers to always invoke the LOI with specific instructions to the master/Owner. Owners agree to discharge against one original Bill of Lading on board the vessel.*

**Conduct of Vessel's Personnel**

14. If Charterers complain of the conduct of the master or any of the officers or crew, Owners shall immediately investigate the complaint. If the complaint proves to be well founded, Owners shall, without delay, make a change in the appointments and Owners shall in any event communicate the result of their investigations to Charterers as soon as possible. 156 157 158 159

**Bunkers at Delivery and Redelivery**

15. ~~Charterers shall accept and pay for all bunkers on board at the time of delivery, and Owners shall on redelivery (whether it occurs at the end of the charter period or on the earlier termination of this charter) accept and pay for all bunkers remaining on board, at the then current market prices at the port of delivery or redelivery, as the case may be, or—if such prices are not available—payment shall be at the then current market prices at the nearest port at which such prices are available; provided that—if delivery or redelivery does not take place in a port payment shall be at the price paid at the vessel's last port of bunkering before delivery or redelivery, as the case may be. Owners shall give Charterers the use and benefit of any fuel contracts they may have in force from time to time, if so required by Charterers, provided suppliers agree.~~ *Charterers to purchase bunkers remaining on board at delivery at the prices as per last purchase, which to be supported by supplier's invoice. On redelivery, Owners to purchase bunkers remaining on board at the same price, which to be similar quantity and same quality as on delivery.* 160 161 162 163 164 165 166 167

**Stevedores, Pilots, Tugs**

16. Stevedores when required shall be employed and paid by Charterers, but this shall not relieve Owners from responsibility at all times for proper stowage, which must be controlled by the master who shall keep a strict account of all cargo loaded and discharged. Owners hereby indemnify Charterers, their servants and agents against all losses, claims, responsibilities and liabilities arising in any way whatsoever from the employment of pilots, tugboats or stevedores, who although employed by Charterers shall be deemed to be the servants of and in the service of Owners and under their instructions (even if such pilots, tugboat personnel or stevedores are in fact the servants of Charterers their agents or any affiliated company); provided, however, that 168 169 170 171 172 173 174

(i) the foregoing indemnity shall not exceed the amount to which Owners would have been entitled to limit their liability if they had themselves employed such pilots, tugboats or stevedores, and 175 176

(ii) Charterers shall be liable for any damage to the vessel caused by or arising out of the use of stevedores, fair wear and tear excepted, to the extent that Owners are unable by the exercise of due diligence to obtain redress therefor from stevedores. 177 178 179

**Supernumeraries**

~~17. Charterers may send representatives in the vessel's available accommodation upon any voyage made under this charter, Owners finding provisions and all requisites as supplied to officers, except liquors. Charterers paying at the rate of USD 20 per day for each representative while on board the vessel.~~ *See clause 48.* 180 181 182

**Sub-letting**

18. Charterers may sub-let the vessel, but shall always remain responsible to Owners for due fulfilment of this charter. 183 184

**Final Voyage**

19. If when a payment of hire is due hereunder Charterers reasonably expect to redeliver the vessel before the next payment of hire would fall due, the hire to be paid shall be assessed on Charterers' reasonable estimate of the time necessary to complete Charterers' programme up to redelivery, and from which estimate Charterers may deduct amounts due or reasonably expected to become due for 185 186 187 188

(i) disbursements on Owners' behalf or charges for Owners' account pursuant to any provision hereof, and 189 190

(ii) bunkers on board at redelivery pursuant to Clause 15. 191

Promptly after redelivery any overpayment shall be refunded by Owners or any underpayment made good by Charterers. 192 193

If at the time this charter would otherwise terminate in accordance with Clause 4 the vessel is on a ballast voyage to a port of redelivery or is upon a laden voyage, Charterers shall continue to have the use of the vessel at the same rate and conditions as stand herein for as long as necessary to complete such ballast voyage, or to complete such laden voyage and return to a port of redelivery as provided by this charter, as the case may be. 194 195 196 197

**Loss of Vessel**

20. Should the vessel be lost, this charter shall terminate and hire shall cease at noon on the day of her loss; should the vessel be a constructive total loss, this charter shall terminate and hire shall cease at noon on the day on which the vessel's underwriters agree that the vessel is a constructive total loss; should the vessel be missing, this charter shall terminate and hire shall cease at noon on the day on which she was last heard of. Any hire paid in advance and not earned shall be returned to Charterers and Owners shall reimburse Charterers for the value of the estimated quantity of bunkers on board at the time of termination, at the price paid by Charterers at the last bunkering port. 198 199 200 201 202 203 204

**Off-hire**

21. (a) On each and every occasion that there is loss of time (whether by way of interruption in the vessel's service or, from reduction in the vessel's performance, or in any other manner) 205 206

(i) due to deficiency of personnel or stores; repairs; gas-freeing for repairs; time in and waiting to enter dry dock for repairs; breakdown (whether partial or total) of machinery, boilers or other parts of the vessel or her equipment (including without limitation tank coatings); overhaul, maintenance or survey; collision, stranding, accident or damage to the vessel; or any other similar cause preventing the efficient working of the vessel; and such loss continues for more than three consecutive hours (if resulting from interruption in the vessel's service) or cumulates to more than three hours (if resulting from partial loss of service); or 207 208 209 210 211 212

(ii) due to industrial action, refusal to sail, breach of orders or neglect of duty on the part of the master, officers or crew; or 213 214

obligations under this Clause 6 extend to all liabilities for customs or import duties arising at any time during the 91
performance of this charter in relation to the personal effects of the master, officers and crew, and in relation to 92
the stores, provisions and other matters aforesaid which Owners are to provide and pay for and Owners shall 93
refund to Charterers any sums Charterers or their agents may have paid or been compelled to pay in respect of 94
any such liability. Any amounts allowable in general average for wages and provisions and stores shall be credited 95
to Charterers insofar as such amounts are in respect of a period when the vessel is on-hire. 96

**Charterers to Provide**

7.   Charterers shall provide and pay for all fuel (except fuel used for domestic services), towage and 97
pilotage and shall pay agency fees, port charges, commissions, expenses of loading and unloading cargoes, *evaporators* 98
*daily production 10-12mt only during vessel's steaming.* canal
dues and all charges other than those payable by Owners in accordance with Clause 6 hereof, provided that all 99
charges for the said items shall be for Owners' account when such items are consumed, employed or incurred for 100
Owners' purposes or while the vessel is off-hire (unless such items reasonably relate to any service given or 101
distance made good and taken into account under Clause 21 or 22); and provided further that any fuel used in 102
connection with a general average sacrifice or expenditure shall be paid for by Owners. 103

**Rate of Hire**

8.   Subject as herein provided, Charterers shall pay for the use and hire of the vessel at the rate of 104
*USD 13,000*         per day, and pro rata for any part of a day, from the time and date of her delivery *(GMT* local 105
time*)* until the time and date of her redelivery *(GMT* local time*)* to Owners, *including overtime,* 106
*communications, work permits, tank cleaning.*
*See Additional Clause 45 of Shelltime 4.*

**Payment of Hire**

9.   Subject to Clause 3(ii), payment of hire shall be made in immediately available funds *every 30 days in* 107
*advance* to: *Owner's nominated bank account. The rate is inclusive of commission payable by*
*Owners.*

~~Account~~
in-                     ~~per calendar month in advance, less:~~ 108
(i)   any hire paid which Charterers reasonably estimate to relate to off-hire periods, and 109
(ii)  any amounts disbursed on Owners' behalf, any advances and commission thereon, and 110
charges which are for Owners' account pursuant to any provision hereof, and 111
(iii) any amounts due or reasonably estimated to become due to Charterers under Clause 3(ii) or 112
24 hereof, 113
any such adjustments to be made at the due date for the next monthly payment after the facts have been 114
ascertained. Charterers shall not be responsible for any delay or error by Owners' bank in crediting Owners' 115
account provided that Charterers have made proper and timely payment. 116
In default of such proper and timely payment, 117
(a)   Owners shall notify Charterers of such default and Charterers shall within seven days of receipt of 118
such notice pay to Owners the amount due including interest, failing which Owners may withdraw the vessel from 119
the service of Charterers without prejudice to any other rights Owners may have under this charter or otherwise; 120
and 121
122
(b)   Interest on any amount due but not paid on the due date shall accrue from the day after that date 123
up to and including the day when payment is made, at a rate per annum which shall be 1% above the U.S. Prime 124
Interest Rate as published by the Chase Manhattan Bank in New York at 12.00 New York time on the due date, 125
or, if no such interest rate is published on that day, the interest rate published on the next preceding day on which 126
such a rate was so published, computed on the basis of a 360 day year of twelve 30-day months, compounded 127
semi-annually. 128

**Space Available to Charterers**

10.  The whole reach, burthen and decks of the vessel and any passenger accommodation (including 129
Owners' suite) shall be at Charterers' disposal, reserving only proper and sufficient space for the vessel's master, 130
officers, crew, tackle, apparel, furniture, provisions and stores, provided that the weight of stores on board shall 131
not, unless specially agreed, exceed *175*              tonnes at any time during the charter period. 132

**Overtime**

11.  Overtime pay of the master, officers and crew in accordance with ship's articles shall be for Charterers' 133
account when incurred, as a result of complying with the request of Charterers or their agents, for loading, 134
discharging, heating of cargo, bunkering or tank cleaning, *all overtime for Master/Officers/crew always to be* 135
*for Owner's account .* 

**Instructions and Logs**

12.  Charterers shall from time to time give the master all requisite instructions and sailing directions, and 136
he shall keep a full and correct log of the voyage or voyages, which Charterers or their agents may inspect as 137
required. The master shall when required furnish Charterers or their agents with a true copy of such log and with 138
properly completed loading and discharging port sheets and voyage reports for each voyage and other returns as 139
Charterers may require. Charterers shall be entitled to take copies at Owners' expense of any such documents 140
which are not provided by the master. 141

**Bills of Lading**

13.  (a)   The master (although appointed by Owners) shall be under the orders and direction of 142
Charterers as regards employment of the vessel, agency and other arrangements, and shall sign bills of lading as 143
Charterers or their agents may direct (subject always to Clauses 35(a) and 40) without prejudice to this charter. 144
Charterers hereby indemnify Owners against all consequences or liabilities that may arise 145
(i)   from signing bills of lading in accordance with the directions of Charterers, or their agents, to 146
the extent that the terms of such bills of lading fail to conform to the requirements of this charter, or (except as 147
provided in Clause 13(b)) from the master otherwise complying with Charterers or their agents orders; 148
~~(b)   Notwithstanding the foregoing, Owners shall not be obliged to comply with any orders from~~ 149
~~Charterers to discharge all or part of the cargo~~ 150
~~(i)   at any place other than that shown on the bill of lading and/or~~ 151
~~(ii)  without presentation of an original bill of lading~~ 152
~~unless they have received from Charterers both written confirmation of such orders and an~~ 153
~~indemnity in a form acceptable to Owners.~~ 154
155

**Duty to Maintain**

3.  (i)  Throughout the charter service Owners shall, whenever the passage of time, wear and tear or any event (whether or not coming within Clause 27 hereof) requires steps to be taken to maintain or restore the conditions stipulated in Clauses 1 and 2(a), exercise due diligence so to maintain or restore the vessel.  44 45 46

(ii)  If at any time whilst the vessel is on hire under this charter the vessel fails to comply with the requirements of Clauses 1,2(a) or 10 then hire shall be reduced to the extent necessary to indemnify Charterers for such failure. If and to the extent that such failure affects the time taken by the vessel to perform any services under this charter, hire shall be reduced by an amount equal to the value, calculated at the rate of hire, of the time so lost.  47 48 49 50 51

Any reduction of hire under this sub-Clause (ii) shall be without prejudice to any other remedy available to Charterers, but where such reduction of hire is in respect of time lost, such time shall be excluded from any calculation under Clause 24.  52 53 54

(iii)  If Owners are in breach of their obligation under Clause 3(i) Charterers may so notify Owners in writing; and if, after the expiry of 30 days following the receipt by Owners of any such notice, Owners have failed to demonstrate to Charterers' reasonable satisfaction the exercise of due diligence as required in Clause 3(i), the vessel shall be off-hire, and no further hire payments shall be due, until Owners have so demonstrated that they are exercising such due diligence.  55 56 57 58 59

Furthermore, at any time while the vessel is off-hire under this Clause 3 Charterers have the option to terminate this charter by giving notice in writing with effect from the date on which such notice of termination is received by Owners or from any later date stated in such notice. This sub-Clause (iii) is without prejudice to any rights of Charterers or obligations of Owners under this charter or otherwise (including without limitation Charterers rights under Clause 21 hereof).  60 61 62 63 64

**Period Trading**

4.  *As per main terms - Owners warrant that the vessel throughout the currency of this charter complies with the provisions of current U.S. Coast Guard Regulations and any subsequent amendments thereto. Owners further warrant that the vessel is not presently under an outstanding letter of discrepancy issued by the U.S. Coast Guard as a result of Coast Guard inspection of the vessel at a prior call at a U.S.A. port. Owners warrant to obtain, maintain and to carry on board throughout the currency of this charter, a U.S. Federal Maritime Commission Certificate of Financial Responsibility and to comply with the U.S. Federal Water Pollution Control Act as amended by the Clean Water Act 1977 (water pollution) and any subsequent amendments thereto. Furthermore Owners to provide evidence of financial responsibility in respect not only of oil but also of hazardous substances.* Owners agree to let and Charterers agree to hire the vessel for a period of 24 *months +/- 30 days in Charterer's option.*  65

**Limits**

commencing from the time and date of delivery of the vessel, for the purpose of carrying all lawful merchandise (subject always to Clause 28) including in particular  66 67

in any part of the world, as Charterers shall direct, subject to the limits of the current British Institute Warranties and any subsequent amendments thereto. Notwithstanding the foregoing, but subject to Clause 35. ~~Charterers may order the vessel to ice-bound waters or to any part of the world outside such limits provided that Owners consent thereto (such consent not to be unreasonably withheld) and that Charterers pay for any insurance premium required by the vessel's underwriters as a consequence of such order.~~  68 69 70 71 72

Charterers shall use due diligence to ensure that the vessel is only employed between and at safe places (which expression when used in this charter shall include ports, berths, wharves, docks, anchorages, submarine lines, alongside vessels or lighters, and other locations including locations at sea) where she can safely lie always afloat. Notwithstanding anything contained in this or any other clause of this charter. Charterers do not warrant the safety of any place to which they order the vessel and shall be under no liability in respect thereof except for loss or damage caused by their failure to exercise due diligence as aforesaid. Subject as above, the vessel shall be loaded and discharged at any places as Charterers may direct, provided that Charterers shall exercise due diligence to ensure that any ship-to-ship transfer operations shall conform to standards not less than those set out in the latest published edition of the ICS/OCIMF Ship-to-Ship Transfer Guide.  73 74 75 76 77 78 79 80 81

The vessel shall be delivered by Owners at a port in *DLOSP Drydock Shanghai.*  82

*The vessel is currently proceeding to load in Argentina and is expected to be open in Australia on about 15-20/ January.*

*In ballast condition she will be at the yard in Shanghai in end January where she will enter dry dock*

*Owners believe that the time in yard for the upgrade will be about 60/75 days.*

at Owners' option and redelivered to Owners at a port in *DLOSP 1 (one) safe port US Gulf or UK Cont or Med or S.E.Asia or Arabian Gulf in Charterers' option - cleaned to gasoline standard.*  83

~~at Charterers' option.~~  84

**Laydays/ Cancelling**

5.  The vessel shall not be delivered to Charterers before *1st April 2007*  and Charterers shall have the option of cancelling this charter if the vessel is not ready and at their disposal on or before *15th May 2007*  85 86

**Owners to Provide**

6.  Owners undertake to provide and to pay for all provisions, wages, and shipping and discharging fees and all other expenses of the master, officers and crew; also, except as provided in Clauses 4 and 34 hereof, for all insurance on the vessel, for all deck, cabin and engine-room stores, *lubrication oils* and for water; for all drydocking, overhaul,  87 88 89

maintenance and repairs to the vessel; and for all fumigation expenses and de-rat certificates *and water ballast management.* Owners'  90

**VI:    Oil Major Vetting**

Owners will invite/request inspectors from Stasco, BP and Chevtex at their risk, cost and expense to inspect the vessel within 6 months of delivery of the ships to Charterers. If Owners are unable to obtain approval of the ships by the named majors within that period, then the hire will be reduced by $usd 50.00 per day per approval. Owners will exercise due diligence in obtaining / attempting to get such approvals , subject to Oil Majors willingness to inspect vessel due to geographical location, trading pattern, cargoes being carried and availability of inspectors.

Provided the vessels are approved by the named Majors, Owners are to exercise due diligence in maintaining the said approvals.  If the approval(s) are not maintained or lost, Owners to have a 30 days grace period in which to have the approval(s) reinstated. If named major(s) refuse to inspect the ship in the port(s) that vessel will call during the 30 day period, or the vessel is at sea, owners will advise Charterers.  Owners will then endeavour to arrange that it will be done at the next opportunity, but not to exceed 60 days from the loss of approval. Owners will keep Charterers well advised /informed of the requests made. If owners are unable to obtain approval for ships by the named majors within given period, then the hire will be reduced by Usd$ 50 per day per approval , subject to suitability of cargo being carried, willingness of oil majors to attend and availability of inspectors.

Charterers also recognise that the said approvals may or may not be invalidated by others departments within the same company and that such acts are beyond owners control and responsibilities, and in which case hire is not to be reduced.


**VII:    Commission**

Owners are to pay a commission per vessel of 2.50 percent payable to H Clarkson on the daily hire or pro rated.


**VIII:    Trading Area/Exclusions**

Vessels shall trade always to safe berths and anchorages within British Institute Warranty Limits and always remain safely afloat and never to force ice or follow ice breakers. The following areas are excluded from trading:

Albania
Israel unless Owners can be guaranteed that there will be no blacklisting of the vessel by Arab league or Arab countries.
Turkish occupied Cyprus
Iran on the basis of Charterers covering any additional wear risk premium if applicable.
Iraq
Somalia          to be discussed on a case by case basis when question raised.
Ethiopia          to be discussed on a case by case basis when question raised.
Yemen, but include Aden to be discussed on a case by case basis when question raised.
North Korea
Cuba for the last six months of the charter period (ie ok for 1.5 yrs but not in the last 6 months due to blacklisting in the United States)
Liberia to be discussed on a case by case basis when question raised.
Sierra Leone
Orinoco River
Any War Zones or Warlike areas
Any countries that are subject to U.N. or similar organisations or authorities sanctions or embargoes at the time of fixing or during the currency of the charter.

Claim Submissions Attachment

**Additional Clauses to Shelltime 4 C/P**

### Clause 43 Compliance

Owner warrants that the Vessel shall, at all times during the term of this Charter, be in full compliance with all applicable international conventions, all applicable laws, regulations, and/or other requirements of the country of the Vessel's registry and of the countries of the port(s) and/or place(s) to which the Vessel may be ordered hereunder ( **in accordance with clause 4),** ~~and all applicable regulations and/or requirements of any terminals or facilities in such port(s) or place(s) where the Vessel may load or discharge.~~ Owner further warrants that the Vessel shall have on board, during the term of this Charter, all certificates, records, or other documents required by the aforesaid conventions, laws, regulations, or requirements, including any required for transiting of the Suez or Panama Canal, by day or night, if such transit is possible. Without limitation, the conventions, laws, regulations, and requirements referred to in this paragraph mean conventions, laws, regulations, and requirements concerning ship size, ship design, safety, operation of ship's equipment ~~(including inert gas and crude oil washing systems, if the Vessel is so equipped),~~ navigation, pollution, and other like matters. At the time of delivery and during the entire period of the Charter, the vessel shall have on board an International Tonnage Certificate, or equivalent, and shall meet applicable guidelines published by the OCIMF.

**Should the vessel be seized or detained by any authority , or arrested at the suit of any part having or purporting to have~~resulting~~ from a claim against any interest in the vessel borne by the original owners, hire shall not be payable in respect of any period during which the vessel is not at charterers use and all extra expenses shall be for owners' account. This clause is valid also for any industrial action due owners non compliance of following.**

International Transport Workers Federation (ITF)
Vessels officers and crew are employed and will be so throughout the period of the charter under a bona fide trade union agreement acceptable to the itf or equivalent.

### Clause 44 Number of grades

If for any reason the vessel, upon arrival at a loading port, is unable to load and the required number of grades **within the vessel's natural segregation  as described in the tank plan** ~~and~~ in accordance with the vessel's capacity **and cargo list as per certificate of fitness and coating resistance list by vessel's classification society,** the Charterers to have an option to provide a suitable cargo consistent with the vessel's capabilities. However, if it is not possible they may require the vessel is to proceed to the nearest repair port in ballast and will there make the necessary repairs to restore vessel to her full capabilities, any time and expense being for Owners' account.

### Clause 45 Cleaning of Cargo

Master shall thoroughly clean tanks, pipes and pumps after every discharging to the standard advised by the charterer, and their sub-charterer, and their surveyor's/supercargo's (see clause 49), . carry **in accordance with the Doctor Verwey tank cleaning guide or other equivalent industry guidelines including the manufacturers guidelines. Charterer always to notify the master in writing as to the required  level of cleanliness of each tank. Charterers shall provide tank cleaning chemicals on request from the master provided such request is reasonable.** ~~and the coating manufacturers guidelines /manufactures' whatever is applicable recommended procedures. In absence of any such advice the master shall always clean the vessel's tanks, pipes and pumps to water white standard as soon as possible after discharge.~~



# TRANSBUNKER GROUP

**Bunker Holdings Ltd.** 
IBIA Member

4th floor, Vashiotis Business Centre
156, 28th October & Iakovou Tompazi, Limassol 3107, Cyprus
Tel. (+357) 25 859 999, Fax. (+357) 25 353 595
E-mail: bunkerholdings@transbunker.com   www.transbunker.com

INVOICE No.: **3414/10-2007**   Date: 30.10.07

ORIGINAL

To Master and/or Owner and/or Managing Owners and/or Operators and/or Charterers of
MV   FORTUNE

A/C: **PAKRI TANKERS OU**

C/O: **PAKRI TANKERS OU**
TOOM RUUTLI 12-10,
TALLINN
10130 ESTONIA

Vessel      : FORTUNE        Due by  :  **02.11.07**
Supplied at : YUZHNIY
Delivery date : 27.10.07

| Description: | Quantity: | Unit: | Unit Price: | Amount, USD: |
|---|---|---|---|---|
| MGO | 50,000 | MT | 800,00 | 40 000,00 |
| BARGING | 1,000 | L/S | 200,00 | 200,00 |
| ECOLOGICAL FEE | 1,000 | L/S | 300,00 | 300,00 |
| | | | Total: | 40 500,00 |

Please remit the above amount as follows:

Beneficiary Bank   Commerzbank AG, London Branch
SWIFT              COBAGB2X
IBAN               GB50COBA40620193077295
Account No.        160930772905 USD
**Beneficiary**        **REF. BUNKER HOLDINGS LTD**
Intermediary Bank  Commerzbank AG, New York Branch
Interm. Bank SWIFT COBAUS3X

NOTES: *      Please quote the above invoice number as reference of payment.
       **     Bank charges to be on remitter's account.
       ***    **PLEASE NOTE THAT THE BENEFICIARY IS "REF. BUNKER HOLDINGS LTD"**

AUTHORIZED SIGNATURE

29.11.2007.
Fortune
vey 006
paid J.K.

SAVINS ExH. 2

**Hansa**pank
Swedbank

# VÄLISMAKSEKORRALDUS
## CROSS-BORDER PAYMENT ORDER

| | | KUUPÄEV / DATE | 08.11.2007 |
|---|---|---|---|

| NR. NO. 1551 | OPERATSIOONI NUMBER REFERENCE NUMBER | 2007110800473757 |
|---|---|---|

| SAAJA NIMI BENEFICIARY'S NAME | MAKSJA NIMI REMITTER'S NAME |
|---|---|
| Bunker Holdings Ltd | PAKRI TANKERS OÜ |

| SAAJA KONTO NR BENEFICIARY'S ACCOUNT NUMBER | MAKSJA KONTO NR REMITTERS ACCOUNT NUMBER |
|---|---|
| GB50COBA40620193077295 | 221028048263 |

| SAAJA AADRESS BENEFICIARY'S ADDRESS | MAKSJA REG NR / ISIKUKOOD REMITTERS REG.NO./ ID CODE |
|---|---|
| 4th floor, Vashiotis Business Centre 156, 28th October and Iakovou Tompazi, Limassol 3107, Cyprus | 11145167 |

MAKSJA AADRESS JA TELEFONI NR
REMITTER'S ADDRESS AND PHONE NO.

TOOM-RÜÜTLI 12-10
10130 TALLINN
ESTONIA

| TELEFONI NR PHONE NO. | 6661685 |
|---|---|
| TELEFONI NR PHONE NO. | 6661672 |
| FAKSI NR FAX NO. | 6309651 |

| SAAJA PANK BENEFICIARY'S BANK |
|---|
| Commerzbank AG, London Branch COBAGB2X |

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid) CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP TYPE OF PAYMENT TAVAMAKSE / REGULAR PAYMENT |
|---|---|
| Commerzbank AG, New York Branch COBAUS3X | ÜLEKANDE KULUD KANNAB CHARGERS WILL BE PAID BY KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

| MAKSE SELGITUS DETAILS OF PAYMENT |
|---|
| Invoice No. 3414/10-2007 |

| SUMMA NUMBRITES JA VALUUTA TÄHIS AMOUNT IN NUMBERS AND CURRENCY CODE |
|---|
| 40 500 USD |

| MAKSJA ALLKIRI, TEMPEL REMITTERS SIGNATURE, STAMP | PANGA TEMPEL BANK'S STAMP 2007110800473757 |
|---|---|

*O55.24@*
*24/09/07*



# BRIDGE OIL LTD

West Wind Building, P.O. Box 1111, Grand Cayman, Cayman Islands, B.W.

## INVOICE

M/T Fortune and/or master and/or
owners and/or charterers and/or
managers and/or operators and/or
Pakri Tankers OU
Toom-Ruutli 12-10, Tallinn 10130
, 10130
ESTONIA

| | |
|---|---|
| Invoice Date: | 24/09/07 |
| Invoice No.: | 12075 |
| Our Order No.: | 91158 |
| Your Reference: | ANY/REW |

| | |
|---|---|
| **Vessel Name:** | Fortune |
| **Delivery Date:** | 09/09/07 |
| **Port:** | Singapore |

| Product/Quality | Quantity | Unit Price USD | Amount USD |
|---|---|---|---|
| Fo-180 Cst. | 735.3730 Mts. | 397.00 | 291,943.08 |
| Gas-Oil | 35.1180 Mts. | 645.00 | 22,651.11 |

| | |
|---|---|
| **Total Amount Due** | 314,594.19 |
| **Due Date** | 09/10/07 |

Payable by telegraphic transfer in USD in full to:
Danske Bank A/S
2-12 Holmens Kanal
DK-1092 Copenhagen K
DENMARK
Swift: DABA DK KK

In favour of: Bridge Oil Ltd.
Account No.: 3205 928367
IBAN No.: DK 163 000 3205 928367

Reference: Invoice Number and Order Number

**ALL BANK CHARGES ARE FOR THE REMITTER'S ACCOUNT**

Please Note:   Interest will be charged by the buyer at   2% per month or pro-rata for
any part thereof in respect of late payment after due date.

*Fortune*
*very 004*



# VÄLISMAKSEKORRALDUS
## CROSS-BORDER PAYMENT ORDER

KUUPÄEV / DATE    30.10.2007

| NR NO. 1497 | OPERATSIOONI NUMBER REFERENCE NUMBER | 2007103000155547 |
|---|---|---|

| SAAJA NIMI BENEFICIARY'S NAME | MAKSJA NIMI REMITTER'S NAME |
|---|---|
| Bridge Oil Ltd | PAKRI TANKERS OÜ |

| SAAJA KONTO NR BENEFICIARY'S ACCOUNT NUMBER | MAKSJA KONTO NR REMITTERS ACCOUNT NUMBER |
|---|---|
| DK1630003205928367 | 221028048263 |

| SAAJA AADRESS BENEFICIARY'S ADDRESS | MAKSJA REG NR / ISIKUKOOD REMITTERS REG.NO./ ID CODE |
|---|---|
| West Wind Building, P.O. Box 1111, Grand Cayman, Cayman Islands, B.W. | 11145167 |

| | MAKSJA AADRESS JA TELEFONI NR REMITTER'S ADDRESS AND PHONE NO. |
|---|---|
| SAAJA PANK BENEFICIARY'S BANK | TOOM-RÜÜTLI 12-10 |
| Danske Bank A/S, 2-12 Holmens Kanal, DK-1092 Copenhagen K, Denmark DABADKKK | 10130 TALLINN |
| | ESTONIA |
| | TELEFONI NR PHONE NO.    6661685 |
| | TELEFONI NR PHONE NO.    6661672 |
| | FAKSI NR FAX NO.    6309651 |

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid) CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP TYPE OF PAYMENT |
|---|---|
| | TAVAMAKSE / REGULAR PAYMENT |
| | ÜLEKANDE KULUD KANNAB CHARGERS WILL BE PAID BY |
| | KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

| MAKSE SELGITUS DETAILS OF PAYMENT |
|---|
| Invoice No. 12075, Order No. 91158 |

| SUMMA NUMBRITES JA VALUUTA TÄHIS AMOUNT IN NUMBERS AND CURRENCY CODE |
|---|
| 30 000 USD |

| MAKSJA ALLKIIRI, TEMPEL REMITTERS SIGNATURE, STAMP | PANGA TEMPEL BANK'S STAMP 2007103000155547 |
|---|---|
| | |



# VÄLISMAKSEKORRALDUS

## CROSS-BORDER PAYMENT ORDER

KUUPÄEV / DATE    07.03.2008

| NR<br>NO.<br>61 | OPERATSIOONI NUMBER<br>REFERENCE NUMBER<br><br>2008030700679671 |
|---|---|

| SAAJA NIMI<br>BENEFICIARY'S NAME<br>Bridge Oil Ltd | MAKSJA NIMI<br>REMITTER'S NAME<br>BALTIC TANKERS OÜ |
|---|---|
| SAAJA KONTO NR<br>BENEFICIARY'S ACCOUNT NUMBER<br>DK1630003205928367 | MAKSJA KONTO NR<br>REMITTERS ACCOUNT NUMBER<br>221039692064 |
| SAAJA AADRESS<br>BENEFICIARY'S ADDRESS<br>West Wind Building, P.O. Box 1111, Grand Cayman | MAKSJA REG NR / ISIKUKOOD<br>REMITTERS REG.NO./ ID CODE<br>11459301 |

**SAAJA PANK**
**BENEFICIARY'S BANK**
Danske Bank A/S, 2-12 Holmens Kanal,
DK-1092 Copenhagen K, Denmark
DABADKKK

**MAKSJA AADRESS JA TELEFONI NR**
**REMITTER'S ADDRESS AND PHONE NO.**
RAEKOJA PLATS 8-18
11616 TALLINN
ESTONIA

TELEFONI NR
PHONE NO.    6661672
TELEFONI NR
PHONE NO.    56355492
FAKSI NR
FAX NO.    6309651

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid)<br>CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP<br>TYPE OF PAYMENT<br>EKSPRESSMAKSE / EXPRESS PAYMENT |
|---|---|
| | ÜLEKANDE KULUD KANNAB<br>CHARGERS WILL BE PAID BY<br>KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

**MAKSE SELGITUS**
**DETAILS OF PAYMENT**
Invoice No. 12075, Order No. 91158 + interests

**SUMMA NUMBRITES JA VALUUTA TÄHIS**
**AMOUNT IN NUMBERS AND CURRENCY CODE**
161 548.40 USD

| MAKSJA ALLKIRI, TEMPEL<br>REMITTERS SIGNATURE, STAMP | PANGA TEMPEL<br>BANK'S STAMP<br>2008030700679671 |
|---|---|



# VÄLISMAKSEKORRALDUS
## CROSS-BORDER PAYMENT ORDER

KUUPÄEV / DATE    05.12.2007

| NR NO. 1706 | OPERATSIOONI NUMBER REFERENCE NUMBER 2007120500868621 |
|---|---|

| SAAJA NIMI BENEFICIARY'S NAME Bridge Oil Ltd | MAKSJA NIMI REMITTER'S NAME PAKRI TANKERS OÜ |
|---|---|
| SAAJA KONTO NR BENEFICIARY'S ACCOUNT NUMBER DK1630003205928367 | MAKSJA KONTO NR REMITTERS ACCOUNT NUMBER 221028048263 |
| SAAJA AADRESS BENEFICIARY'S ADDRESS West Wind Building, P.O. Box 1111, Grand Cayman, Cayman Islands, B.W. | MAKSJA REG NR / ISIKUKOOD REMITTERS REG.NO./ ID CODE 11145167 |
| | MAKSJA AADRESS JA TELEFONI NR REMITTER'S ADDRESS AND PHONE NO. TOOM-RÜÜTLI 12-10 10130 TALLINN ESTONIA TELEFONI NR PHONE NO. 6661685 TELEFONI NR PHONE NO. 6661672 FAKSI NR FAX NO. 6309651 |
| SAAJA PANK BENEFICIARY'S BANK Danske Bank A/S, 2-12 Holmens Kanal, DK-1092 Copenhagen K, Denmark DABADKKK | |

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid) CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP TYPE OF PAYMENT TAVAMAKSE / REGULAR PAYMENT |
|---|---|
| | ÜLEKANDE KULUD KANNAB CHARGERS WILL BE PAID BY KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

| MAKSE SELGITUS DETAILS OF PAYMENT Invoice No. 12075, Order No. 91158 |
|---|

| SUMMA NUMBRITES JA VALUUTA TÄHIS AMOUNT IN NUMBERS AND CURRENCY CODE 15 000 USD |
|---|

| MAKSJA ALLKIRI, TEMPEL REMITTERS SIGNATURE, STAMP | PANGA TEMPEL BANK'S STAMP 2007120500868621 |
|---|---|

Printed    22.02.2008

## Msg Type    103

| | | | | |
|---|---|---|---|---|
| **SENDER** | HABAEE2X | | **OSN/ISN** | 704718 |
| **RECEIVER** | DABADKKK | | **SN** | 6988 |
| | | | | |
| **STATUS** | OK | | **SID** | 16414666 |
| **RELATED REF** | 080222003367 | | **SW TIME** | 22.02.2008    11:00:00 |
| **REF** | 080222003367 | | **IN TIME** | 22.02.2008    10:51:12 |

| | |
|---|---|
| 20 | 080222003367 |
| 23B | CRED |
| 23E | SDVA |
| 32A | 080222USD134797,09 |
| 33B | USD134797,09 |
| 50F | /EE472200221032450070<br>1/ALEXELA LOGISTICS<br>2/KADAKA 84C<br>3/EE/TALLINN 10922 |
| 53A | BKTRUS33 |
| 54A | BOFAUS3N |
| 59 | /DK1630003205928367<br>BRIDGE OIL LTD<br>WEST WIND BUILDING, P.O. BOX 1111,<br>GRAND CAYMAN, CAYMAN ISLANDS, B.W. |
| 70 | INVOICE NO. 12075, ORDER NO. 91158 |
| 71A | OUR |



SIA "BALTIK OIL GROUP"
LV 40003598964
Braslas iela 20, Riga, LV-1035
Tālr.: (+371) 67040598
       (+371) 67040626
Fakss: (+371) 67040544
E-mail: info@baltikoil.lv

A/s "Hansabanka"
IBAN: LV81HABA0551005187256
SWIFT: HABALV22





A/s "Rietumu banka"
IBAN: LV66RTMB0000100801586
SWIFT: RTMBLV2X

Buyer:"PAKRI TANKERS OU"
Toom-Ruutli 12-10,
Tallinn 10130, Estonia
Cc: Vessel and/ or Owners and/ or Operator and/ or Manager and/ or Agent and/ or Master

| Invoice: | Nr.3744 |
|---|---|

| Date: | 04.01.2008 |
|---|---|

| Due date: | 21.01.2008 |
|---|---|

To invoice for the following bunker supply:

m/v "Fortune" at Gothenburg "off"

date of delivery 22.12.2007

| | | |
|---|---|---|
| LSFO 180Cst (Sulphur max.1,5%) 151,619.00 kg | at USD 566.00 pmtd | 85,816.35 USD |
| Gasoil (Sulphur max.0,16%) 21,695.00 kg | at USD 867.00 pmtd | 18,809.57 USD |
| | **Total Amount Due:** | **104,625.92 USD** |

All bank transfer charges for buyers account
For late payment interest will be charged
1.50 % per month

Funds payable by telegraphic transfer to:

Bank: Rietumu Banka
54 Brivibas str., Riga LV 1011
Latvia
SWIFT: RTMB LV2X
Account:IBAN LV66RTMB0000100801586
In favour: SIA "Baltik Oil Group"

Bank correspondent: JPMORGAN CHASE BANK
New York, USA
SWIFT: CHAS US 33
Intermediary Account: USD 400 230 518

**SWIFT message copy**

| | |
|---|---|
| Swift output time | : 18.02.2008 15:00:00 |
| Swift Output | : FIN 103 Single Customer Credit Transfer |
| Sender | : HABAEE2X<br>AS HANSAPANK<br>TALLINN EE |
| Receiver | : HABALV22<br>AS HANSABANKA<br>RIGA LV |

**Message Text**

20: Transaction Reference Number
080218007648

23B: Bank Operation Code
CRED

32A: Value Date, Currency Code, Amount
080218USD113467,32

33B: Currency Code, Amount
USD113467,32

50F: Ordering Customer
/EE472200221032450070
1/ALEXELA LOGISTICS
2/KADAKA 84C
3/EE/TALLINN 10922

59: Beneficiary Customer
/LV81HABA0551006187256
BALTIK OIL GROUP SIA
BRASLAS IELA 20, RIGA LV1035, LATVI
A

70: Details of Payment
INVOICES NR 3744 MT FORTUNE AND NR
3746 MT BROVIG WIND, USD 100,590.02
PRINCIPAL , AMOUNT -USD 1,877.30 P
ENALTY -USD 11,000 LEGAL COSTS

71A: Details of Charges
SHA

Telehansa.net

 **Hansapank**
Swedbank

14.02.2008

Starting from 28.01.2008, due to joining Single Euro Payment Area (SEPA), EU-payment has been renamed to **European payment**. In more detail readhere.

On Eurpean payment form you can add additional data if necessary. This data will be forwarded to the beneficiary only in case the beneficiary's bank is SEPA compliant.

**Group payment costs are divided; i.e. the parties pay jointly.** Receiving group payment in Swedbank Group banks is free of charge.

### International payment order 221032450070 ALEXELA LOGISTICS

| | |
|---|---|
| Document No: | 768 |
| Transaction date: | 14.02.2008 |
| Payment type: | Normal |
| Transaction costs paid by: | The costs are divided, i.e. the parties pay jointly |

| | |
|---|---|
| Beneficiary's name: | Baltik Oil Group SIA |
| Beneficiary's address: | Braslas iela 20, Riga LV1035, Latvia |
| Beneficiary's country: | LATVIA |
| Beneficiary's account or IBAN: | LV81HABA0551006187256 |

| | |
|---|---|
| Group payment: | Yes |
| Beneficiary's bank name and address: | Hansabanka |
| SWIFT code / BIC: | HABALV22 |

| | |
|---|---|
| Amount: | 67 060.00 USD |
| | coverage currency USD |
| Details: | Inv. 3744 |

| | |
|---|---|
| Balance of payments code: | 200-Goods purcased from the EU Member States |
| Status | Executed |
| Archiving ID | 2008021400371246 |





# GULF AND CONTINENTAL BUNKER FUELS CO. LTD

Mailing address: P.O Box: 18068, Jebel Ali, Dubai, United Arab Emirates
Telephone: 04-8059 525  Fax: 04-881 3534  E-mail: bunkeraccounts.ae@gacworld.com

## INVOICE

This invoice is due for payment latest by **04 Jan 2008**

MV FORTUNE AND/OR MASTER/
OWNERS/AGENTS/CHARTERERS/MANAGERS
PAKRI TANKERS

TOOM RUUTLI 12-10 ,10130
TALLINN
ESTONIA
ESTONIA

| | |
|---|---|
| Invoice Number | : 40005694 |
| Invoice Date | : 16-Dec-2007 |
| Our Ref .(Job No) | : 10684 |
| Our Contact Person | : |
| Your Ref . | : |

Remarks

Name of Vessel :  FORTUNE
Supplied at / off :  ANTWERP, BELGIUM

Delivery Receipt No. : As Attached
Date of Supply        : 06-Dec-2007

| Item.No. | Description | Quantity | Price per MT | USD |
|---|---|---|---|---|
| 1 | IFO 180 CST | 200.815 | 493.00 | 99,001.80 |
| 2 | MGO | 40.420 | 820.00 | 33,144.40 |

| | |
|---|---|
| **Amount to be paid in USD** | **132,146.20** |

**Terms of Payment : 30 DAYS Nett from date of delivery.**

Beneficiary: GULF AND CONTINENTAL BUNKER FUELS CO. LTD.
HSBC BANK PLC                      USD A/C NO: 373 389 31
POULTRY                              SWIFT CODE: MIDL GB 22
LONDON EC2P 2BX

Payments to be free of all charges and as per our Terms and Conditions of Sale, late payment is subject to an
Interest charge of 1.5 pct per month.

IBAN no. : GB29MIDL4005153733893l

Registered under Hamriyah Free Zone Branch Office License No. 670
Branch of Gulf and Continental Bunker Fuels Company Limited with registered address at P.O. Box 958, Tortola, BVI

Telehansa.net

**SWIFT message copy**

Swift output time  : 14.03.2008 12:20:00

Swift Output      : FIN 103 Single Customer Credit Transfer

Sender            : HABAEE2X
                    AS HANSAPANK
                    TALLINN EE

Receiver          : BKTRUS33
                    DEUTSCHE BANK TRUST COMPANY AMERICAS
                    NEW YORK,NY US

**Message Text**

20:  Transaction Reference Number
     080314004897

23B: Bank Operation Code
     CRED

23E: Instruction Code
     SDVA

32A: Value Date, Currency Code, Amount
     080314USD133881,34

33B: Currency Code, Amount
     USD133881,34

50F: Ordering Customer
     /EE472200221032450070
     1/ALEXELA LOGISTICS
     2/KADAKA 84C
     3/EE/TALLINN 10922

56A: Intermediary
     MRMDUS33

57A: Account With Institution
     MIDLGB22

59:  Beneficiary Customer
     /GB29MIDL40051537338931
     GULF AND CONTINENTAL BUNKER FUELS C
     O LTD
     PO BOX 18068, JEBEL ALI DUBA

70:  Details of Payment
     INV 40005694,40005713

71A: Details of Charges
     SHA



ALPHA TRADING SpA
Sede legale: 20121 Milano
via Brera, 17
Cap. soc. € 1.040.000 i.v.
C.C.I.A.A. Milano 1528880/1996
Partita IVA 11879090154
R.E.A.1503124
Cap. soc. € 2.500.000 i.v.

Uffici amministrativi
16121 Genova
via Brigata Liguria, 3/19
tel. 010.5472350
fax 010.5472356
www.alphatrading.it
E-mail: info@alphatrading.it

Uffici commerciali
Vendite Marina
tel. 010.5472200 fax 010.5472209
Combustibili e Bitumi
tel. 010.5472290 fax 010.5472301
Vendite Aviazione
tel. 010.5472243 fax 010.5472245

Stabilimento
15050 Carbonara Scrivia (Al)
via Genova, 22
tel./ fax 0131.892843
tel. 0131.892941

## INVOICE

| Invoice Nr | Date |
| --- | --- |
| FB07/--3449 | 12/12/2007 |

| M/V | Contract Nr |
| --- | --- |
| FORTUNE | BK07/--3451 |

| Port | Delivery Date |
| --- | --- |
| MARINA DI CARRARA | 22/11/2007 |

| Customer Code |
| --- |
| C03620 |

Messrs

COMANDO  BORDO MV FORTUNE C/O AGENZIA ALFA

Vat

| DESCRIPTION | UNIT | QTY | UNIT PRICE USD | AMOUNT USD | VAT Code |
| --- | --- | --- | --- | --- | --- |
| GASOIL | MT | 21,001 | 934,00 | 19.614,93 | 85 |
| RTW | NR | 1 | 350,00 | 350,00 | 85 |

| Depot | Bunker Receipt | Custom certification 8507C | | |
| --- | --- | --- | --- | --- |
| | | | Issued on | 22/11/2007 |

| Vat Code | Vat Rate | | Taxable Amount | Vat Amount |
| --- | --- | --- | --- | --- |
| 85 | ART. 8 BIS 1° COMMA VENDITA | | 19.964,93 | 0 |

| Total Taxable Amount USD 19.964,93 | Total Vat Amount USD | Value DOLLARS | TOTAL AMOUNT USD 19.964,93 |
| --- | --- | --- | --- |

**Payment Term** 30 DAYS DELIVERY DATE BY T.T.          Value Date 22/12/2007
Account N.     000000431680
INTESA BCI - CARIPLO - SEDE DI GENOVA
PIAZZA FONTANE MAROSE 1 16121 - GENOVA
Cod. ABI 3069     Cod.CAB 1460     Cod. Cin N  IBAN   IT64N0306901460000000431680
BIC  BCITIT22078

Alpha Trading terms and conditions of sale, available upon request, to be applied



# VÄLISMAKSEKORRALDUS
## CROSS-BORDER PAYMENT ORDER

KUUPÄEV / DATE        22.11.2007

| NR NO. 1627 | OPERATSIOONI NUMBER REFERENCE NUMBER | 2007112200141234 |
|---|---|---|

| SAAJA NIMI BENEFICIARY'S NAME | MAKSJA NIMI REMITTER'S NAME |
|---|---|
| AL.FA SRL, Agenzia Marittima | PAKRI TANKERS OÜ |

| SAAJA KONTO NR BENEFICIARY'S ACCOUNT NUMBER | MAKSJA KONTO NR REMITTERS ACCOUNT NUMBER |
|---|---|
| IT23V0306924501041738450105 | 221028048263 |

| SAAJA AADRESS BENEFICIARY'S ADDRESS | MAKSJA REG NR / ISIKUKOOD REMITTERS REG.NO./ ID CODE |
|---|---|
| Via Nazario Sauro 66, 54036 Marina di Carrara | 11145167 |

| | MAKSJA AADRESS JA TELEFONI NR REMITTER'S ADDRESS AND PHONE NO. |
|---|---|
| SAAJA PANK BENEFICIARY'S BANK | TOOM-RÜÜTLI 12-10 10130 TALLINN ESTONIA |
| Banca Intesa of Marina di Carrara BCITITMM110 | TELEFONI NR PHONE NO. 6661685 TELEFONI NR PHONE NO. 6661672 FAKSI NR FAX NO. 6309651 |

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid) CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP TYPE OF PAYMENT EKSPRESSMAKSE / EXPRESS PAYMENT |
|---|---|
| | ÜLEKANDE KULUD KANNAB CHARGERS WILL BE PAID BY KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

| MAKSE SELGITUS DETAILS OF PAYMENT |
|---|
| MV Fortune voy 6 in port of Marina di Carrara, bunker supply |

| SUMMA NUMBRITES JA VALUUTA TÄHIS AMOUNT IN NUMBERS AND CURRENCY CODE |
|---|
| 14 500 EUR |

| MAKSJA ALLKIRI, TEMPEL REMITTERS SIGNATURE, STAMP | PANGA TEMPEL BANK'S STAMP 2007112200141234 |
|---|---|



# ocean energy ltd

TO:   Buyers and/or Master and/or Owners and/or Charterers
and/or Operators of MV FORTUNE
AND: PAKRI TANKERS OU

TOOM RUUTLI 12 - 10

**DATE :**   **17/01/08**

**INVOICE N°**   **200712136**

10130 TALLIN - ESTONIA

---

Port:  ISTANBUL                    REF: MV  FORTUNE
Delivery Date  15/11/07       IMO number  8517086

---

Vessel duly bunkered as follows

| | | | | | | |
|---|---|---|---|---|---|---|
| MTS | 164,000 FUEL 180 CST | | AT USD | 538,00 MTW | =USD | 88 232,00 |
| LUMPSUM DELIVERY CHARGES | | | | | =USD | 1 000,00 |

91150.00

| | | | |
|---|---|---|---|
| **TOTAL AMOUNT** | | =USD | 89 232,00 ~~45~~ |
| **VALUE :** | **17/01/08** | | S. E. & O |

---

Payment to be effected, free of all charges to us, by telegraphic transfer to:

B.N.P. PARIBAS (SUISSE) SA
2, PLACE DE HOLLANDE
CH-1211 GENEVA 1 - SWITZERLAND
SWIFT: BPPBCHGG

In favour of:      OCEAN ENERGY LTD
IBAN Code:       CH36 0868 6001 0784 3200 1
Through:           BNP PARIBAS NEW YORK - NY / U.S.A.
                        SWIFT: BNPAUS3N
Reference:        MV FORTUNE / 200712136
IMPORTANT:     Please have yours bankers confirm payment to :
                        B.N.P. PARIBAS (SUISSE) SA - Att : MR A. WAGNER - Telex : 412100
                        By tested telex advice, latest ;
Remark:            Interests for late payment will be charged at 2 pct pro rata/month
Please be notified that proceeds of this invoice have been assigned to BNP PARIBAS (SUISSE)
SA Geneva. Consequently please effect the payment of this invoice exclusively to account
78432/1P with BNP PARIBAS (SUISSE) SA.

Trust House 112, Bonadie Street - KINGSTOWN - SAINT VINCENT



# VÄLISMAKSEKORRALDUS
## CROSS-BORDER PAYMENT ORDER

KUUPÄEV / DATE    08.11.2007

| NR NO. | OPERATSIOONI NUMBER REFERENCE NUMBER |
|---|---|
| 1550 | 2007110800467186 |

| SAAJA NIMI BENEFICIARY'S NAME | MAKSJA NIMI REMITTER'S NAME |
|---|---|
| Ocean Energy Ltd | PAKRI TANKERS OÜ |

| SAAJA KONTO NR BENEFICIARY'S ACCOUNT NUMBER | MAKSJA KONTO NR REMITTERS ACCOUNT NUMBER |
|---|---|
| CH3608686001078432001 | 221028048263 |

| SAAJA AADRESS BENEFICIARY'S ADDRESS | MAKSJA REG NR / ISIKUKOOD REMITTERS REG.NO./ ID CODE |
|---|---|
| 57, rue Grimaldi, MC 98000 Monaco | 11145167 |

**MAKSJA AADRESS JA TELEFONI NR**
**REMITTER'S ADDRESS AND PHONE NO.**

TOOM-RÜÜTLI 12-10
10130 TALLINN
ESTONIA

TELEFONI NR PHONE NO.    6661685
TELEFONI NR PHONE NO.    6661672
FAKSI NR FAX NO.    6309651

**SAAJA PANK BENEFICIARY'S BANK**

BNP Paribas (Suisse) SA Geneva 2, Place de Hollande, CH-1211 Geneva 11, Switzerland
BPPBCHGG

| SAAJA PANGA KORRESPONDENTPANK JA VAHEPANK (nimi, aadress, SWIFT, BLZ, ABA, FW, Sort Code või muud koodid) CORRESPONDENT BANK AND INTERMEDIARY BANK (NAME, ADDRESS, SWIFT, BLZ, ABA, FW, SORT CODE) | MAKSE TÜÜP TYPE OF PAYMENT |
|---|---|
| BNP Paribas New York, NY, USA BNPAUS3N | EKSPRESSMAKSE / EXPRESS PAYMENT |
| | ÜLEKANDE KULUD KANNAB CHARGERS WILL BE PAID BY KULUD ON JAOTATUD E. MAKSTAKSE KAHASSE / THE COSTS ARE DIVIDED, I.E. THE PARTIES PAY JOINTLY |

**MAKSE SELGITUS DETAILS OF PAYMENT**

MT Fortune bunker, prepayment 50 pct

**SUMMA NUMBRITES JA VALUUTA TÄHIS AMOUNT IN NUMBERS AND CURRENCY CODE**

91 150 USD

| MAKSJA ALLKIRI, TEMPEL REMITTERS SIGNATURE, STAMP | PANGA TEMPEL BANK'S STAMP |
|---|---|
| | 2007110800467186 |

 **PAKRI TANKERS**

Pakri Tankers

**INVOICE**

**Number** **FORTU 03 / 08**
**Date:** 06.02.2008
**Due date:** 07.02.2008

| Client | Payment instructions / Beneficiary |
|---|---|
| LAVINIA / ATHENS<br>c/o CLARKSONS<br>St Magnus House 3 Lower Thems Street<br>London<br>EC3R 6HE | **Pakri Tankers OU**<br>Reg. no. 11145167<br>Address:Toom-Ruutli 12-10, Tallinn 10130, Estonia<br>E-mail: oper@pt.ee<br>Tel. +372 6661686<br>VAT: EE100997725 |

| Description | Banking details | |
|---|---|---|
| mt Fortune.<br>Bunker on re delivery. | **IBAN:** | EE 7122 0022 1028 048 263 |
| | **S.W.I.F.T:** | HABAEE2X |
| | **Bank:** | Hansapank |
| | **Address:** | Liivalaia 8, 15040 Tallinn, Estonia |

| Service | Currency<br>USD |
|---|---|
| **m/t Fortune bunker / cleaning chemicals on re - delivery.** | |
| Total MGO on re delivery: 50.6 mts x 473 USD | 23,933.80 |
| Total HFO on re delivery: 180.1 mts x 400 USD | 72,440.00 |
| Cleaning Chemicals Alcaline Extra 200 ltrs x 2.45 Euro ( 3.61 USD) | 722.00 |
| | |
| m/t Fortune fraudulent bunker ( according to independent surveyor | |
| **report in Eastham):** | |
| IFO 25.927 mts x 400 USD | 10,370.80 |
| MGO 4.900 mts x 473 USD | 2,317.70 |
| | |
| **Bunker prices same as on delivery.** | |
| | |
| **Total due, USD** | **109,784.30** |

Amount:    *United States Dollars*
           *One Hundred Nine Thousand Seven Hundred Eighty Four and 30ct*

## Please state only invoice number on your payment order!

We reserve the right to add a finance charge for any invoice paid after due date at the rate of 1% per month

VAT is to be accounted for by customer

*Thank you for your business*