```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                          ECF
------------------------------------------------------------X
PAKRI TANKERS OU,

                                                    08 CV  2424 (GBD)
                          Plaintiff,

       -against-

AYRES SHIPPING INC.


                          Defendant.
------------------------------------------------------------X
```

## MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANT'S MOTION

MAHONEY & KEANE, LLP
111 Broadway, 10th Floor
New York, New York  10006
(212) 385-1422

Attorneys for Plaintiff
PAKRI TANKERS OU

Christopher H. Mansuy
    -of Counsel-

## TABLE OF CONTENTS

**INTRODUCTION**……………………………………………………………………1

**POINT I**

**PAKRI'S RULE 41(a)(1)(i) VOLUNTARY DISMISSAL
  IS SELF-EXECUTING AND ENDS THE CASE**……………………………1

**POINT II**

**CLERK LACKS POWER TO REJECT FILING**……………………………………2

**POINT III**

**PLAINTIFF HAS THE RIGHT TO VOLUNTARILY DISMISS**………………..4

**POINT IV**

**AYRES IS NOT ENTITLED TO COUNTER-SECURITY**……………………….6

**POINT V**

**AYRES' CLAIMS ARE MERITLESS, SPECULATIVE OR UNRIPE**……………7

**POINT VI**

**COURT LACKS JURISDICTION OF
  DISPUTES CONCERNING SECURITY**……………………………………10

**POINT VII**

**PAKRI'S RULE B COMPLAINT WAS PROPER**………………………………11

**CONCLUSION**……………………………………………………………………..13

## INTRODUCTION

Pakri Tankers OU respectfully submits this memorandum of law in opposition to the motion by plaintiff for an Order requiring plaintiff to post counter-security or, in the alternative, for an Order vacating plaintiff's attachment and dismissing the Complaint of Pakri Tankers OU or, in the alternative, for an Order enjoining Pakri Tankers OU from prosecuting its claim against defendant Ayres Shipping Inc. in arbitration proceedings at London.

Pakri Tankers OU relies upon the accompanying Declarations of Christopher H. Mansuy, Esq., executed the 21st day of April, 2008, the Exhibits annexed thereto and the Declaration of Dimitrijs Savins, executed the 17th day of April, 2008 and the Exhibits annexed thereto.

## POINT I

### PAKRI'S RULE 41(a)(1)(i) VOLUNTARY DISMISSAL IS SELF-EXECUTING AND ENDS THE CASE

The chronology of events with regard to the plaintiff's filing the Notice of Voluntary Dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(i) is set forth in paragraphs 3 through 9 of the Mansuy Declaration. The Notice of Voluntary Dismissal was received by the ECF system of the Clerk on April 3, 2008 at 3:30 P.M. Mansuy Decl. Exh.1.

At the time of filing at 3:30 P.M. on April 3, 2008, defendant Ayres had neither answered nor filed a motion for summary judgment. Mansuy Decl.¶7. Rule 41(a)(1)(i) provides as follows:

> (a) Voluntary Dismissal: Effect Thereof.
>
> *(1) By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs,...

Accordingly, the voluntary dismissal is valid and the case is at an end, thereby rendering any further proceedings moot insofar as there is no existing case or controversy as required by Article III of the U.S. Constitution. Dismissal is a right which belongs to the plaintiff. *Marques v. Fed. Reserve Bank of Chicago*, 286 F.3d 1014, 1017 (7th Cir. 2002); *American Soccer Co., Inc. v. Score Fire Enterprises*, 187 F.3d 1108, 1111 (9th Cir. 1999); 8 MOORE'S FEDERAL PRACTICE §41.33 (Matthew Bender, 3d Ed.)

## POINT II

### CLERK LACKS POWER TO REJECT FILING

Defendant Ayres does not mention in its motion papers Pakri's filing the Voluntary Notice of Dismissal at 3:30 P.M. on April 3, 2008. As more fully set forth in the accompanying Mansuy Declaration, the ECF Clerk sent an email at 3:40 P.M. on April 3 (Mansuy Decl., Exh. 2) advising that a Notice of Dismissal is not an ECF document and that it is filed with the Orders and Judgments Clerk, which was subsequently done at 3:49 P.M. (Mansuy Decl., Exh. 3).

This sequence of events clearly frames the simple issue whether the delegation of administrative and management responsibility to the ECF system carries with it the concomitant power for the ECF system software to ignore, re-write or alter the Federal Rules of Civil Procedure.

> The home page of the Southern District of New York website provides as follows:
>
> > The Southern District of New York has implemented Electronic Case Filing (ECF) and publishes the electronic case filing rules and instructions to assist the bar. Documents filed in ECF cases must be filed electronically and will not be accepted in paper form, unless authorized.

2

Pakri Tankers OU has found no justification or authority for the ECF Clerk rejecting the filing of the Notice of Voluntary Dismissal at 3:30 P.M. As set forth in the pertinent part of this Court's ECF Procedure 3(b), "...a document filed electronically is deemed filed at the date and time stated on the Notice of Electronic Filing from the Court." See Mansuy Decl., Exhs. 1 and 6. Paragraph 5 of the "Third Amended Instructions" promulgated by the Clerk of the Court on this Court's website provides that all documents subsequent to the Complaint and the original affidavit of service must be filed electronically. Mansuy Decl., Exh. 6. The only exception to this instruction is not actually set forth in the "Procedures" or "Instructions" but rather in the Guidelines for electronic case filing at page 5 of 7 wherein practitioners are directed to file "proposed orders, judgments and stipulations" at the email address of the Orders and Judgments Clerk. *Id.* As Exhibit 2 to Mansuy Declaration makes plain, the ECF system erroneously thought that the Notice of Dismissal was a "proposed order, judgment or stipulation," rather than a self-executing document ending the case.

Local Civil Rule 5(2) which deals with electronic service and filing of documents provides:

> A paper served and filed by electronic means in accordance with procedures promulgated by the Court is, for the purposes of Federal Rule of Civil Procedure 5, served and filed in compliance with the Local Civil Rules of the Southern and Eastern Districts of New York.

Fed. R. Civ. P. 5(d) provides as follows:

> (4) Acceptance by the Clerk. The clerk must not refuse to file a paper solely because it is not in the form prescribed by these rules or by a local rule or practice.

3

In *Farzana K. v. Indiana Dept. of Education*, 473 F.3d 703, 707-8 (7th Cir. 2007), the Court discusses the duty of the Clerk either in person or in a computer system to receive facially imperfect papers leaving to the Judge alone the duty to separate form and substance.

The Court held:

> An e-filing system likewise must accept every document tendered for filing; it cannot reject any paper that the clerk must accept.

*Id.* at 708.

Given that there is no factual dispute that the Notice of Voluntary Dismissal was filed prior to the time defendant filed the answer, the rules of this Court make plain that the case is terminated.

## POINT III

## PLAINTIFF HAS THE RIGHT TO VOLUNTARILY DISMISS

In *Thorp v. Scarne*, 599 F.2d 1169, 1176 (2d Cir. 1979), the Court commented about the mechanics of Rule 41(a)(1)(i) as follows:

> In contrast to other methods of dismissal contemplated by *Rule 41*, voluntary dismissal prior to defendant's service of an answer or a motion for summary judgment is effective *in the absence of any action by the court.* (emphasis added).

The Court stated further:

> Obviously, *Rule 41(a)(1)(i)* dismissals will no longer be self-executing, as intended, if there is to be frequent judicial intervention for the purpose of determining whether the "equivalent" of an answer or a motion for summary judgment has been served for the purpose of weighing whether the merits have been sufficiently considered by the Court to warrant terminating plaintiff's right to dismiss the proceedings. We hold, therefore, that at least in cases falling short of the extreme exemplified by Harvey Aluminum, notices of dismissal filed in conformance with the explicit requirements of *Rule 41(a)(1)(i)* are not subject to vacatur.

*Id.* Thus, notwithstanding the fact that the ECF system rejected the Notice of Dismissal filed at 3:30 on April 3, 2008, that filing, under the Procedures, Instructions and Guidelines promulgated by the Southern District of New York was valid and effective. If the Court were to hold that it was not filed, then there would be no proper way to file it because it does not fit within the category of a "proposed order, judgment or stipulation," the only documents that are to be filed first with the Orders and Judgments Clerk by email. A Notice of Dismissal is not "proposed" because it unilaterally closes the file. *Thorp v. Scarne, supra at* 1176, *citing American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297 (5th Cir. 1963).

In *Santiago et al. v. Victim Services Agency*, 753 F.2d 219, 222 (2d Cir. 1985), the Court held:

> We have recognized that *Rule 41(a)(1)(i)* means just what it says ever since our Court, through Judge Learned Hand, held that a district court is powerless to vacate a voluntary dismissal under the rule even after a motion to dismiss had been filed. *Kilpatrick v. Texas & P. Ry.*, 166 F.2d 788, 792 (2nd Cir.), *cert. denied*, 335 U.S. 814, 69 S. Ct. 32, 93 L. Ed. 369 (1948); *see also Littman v. Bache & Co.*, 252 F.2d 479, 481 (2nd Cir. 1958). Although our decision in *Harvey Aluminum Inc. v. American Cyanamid Co.*, 203 F.2d 105 (2nd Cir.), *cert. denied*, 345 U.S. 964, 73 S. Ct. 949, 97 L. Ed. 1383 (1953), departed from this unequivocal rule by holding that a motion for a preliminary injunction might be treated as the equivalent of the filing of an answer or motion for summary judgment, *id. at 108*, our subsequent decision in *Thorp* made clear that *Harvey* is to be limited to its "extreme" facts. *Thorp. supra, 599 F.2d at 1175-76; accord, Littman, supra,* 252 F.2d at 481; *Winterland Concessions Co. v. Smith* 706 F.2d 793, 795 (7th Cir. 1983); *D.C. Electronics, Inc. v. Nartron Corp.*, 511 F.2d 294, 297 (6th Cir. 1975); *Pilot Freight Carriers, Inc. v. International Brotherhood of Teamsters*, 506 F.2d 914, 916 (5th Cir.), *cert. denied*, 422 U.S. 1048, 45 L. Ed. 2d 700, 95 S. Ct. 2665 (1975).

In *Cooter & Gell v. Hartmarx*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 356 (1990), the United States Supreme Court overturned the holding of the *Santiago* case with regard to the Court's retention of jurisdiction for proceedings for attorneys' fees by statute or under Rule 11 or

5

collateral matters. However, the Supreme Court did not modify or abrogate the legal right or process whereby a plaintiff can voluntarily and unilaterally dismiss a lawsuit before an answer or summary judgment motion has been served. In passing, the Supreme Court noted that prior to Rule 41(a)(1), a plaintiff had the ability to withdraw a complaint at any time up until judgment. Rule 41(a)(1) limited that previously existing right. *Id., 397.*

The Second Circuit Court of Appeals subsequently reformed its own holdings with regard to matters over which a court may exercise jurisdiction after a Rule 41(a)(1) voluntary dismissal in *Chemiakin v. Yefimov*, 932 F.2d 124 (2d Cir. 1991) and *Valley Disposal, Inc. v. Central Vermont Solid Waste Management District*, 71 F.3d 1053 (2d Cir. 1995). But there is no question that a counter-claim does not survive a dismissal because no answer had been filed.

## POINT IV

### AYRES IS NOT ENTITLED TO COUNTER-SECURITY

If this Honorable Court determines that it retains jurisdiction for the purpose of hearing Ayres' Rule E(7) motion for counter-security, Pakri respectfully submits that the motion should be denied. The reasons are set forth in the accompanying Declaration of Dimnitijs Savins, the Managing Director of Pakri. He states in paragraph 3 that, after March 27, 2008, Ayres arrested the fuel on three different time-chartered vessels, with a total value of $212,160. The cost to Pakri in terms of lost time amounts to $254,000. Id., ¶4. But most importantly, Ayres has caused the Court in Estonia to freeze the bank accounts of Pakri. As a result, even if this Court orders Pakri to post counter-security it has no access to the $215,252 in the frozen bank accounts. Id., ¶¶6 and 7.

This Court has "broad discretion in deciding whether to order counter-security." *Result Shipping Co. v. Ferruzi Trading USA Inc., 56 F. 3d 394, 399(2d Cir. 1995).* The Court held that the trial court must

> weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting counter-security, against the potential injustice of requiring the defendant counterclaimant to post security without affording reciprocal protection.

*Id., at 400.* Applying these standards to this circumstance must lead to a denial of the motion. Ayres has amassed over $430,000 in cash security but it also has not reimbursed Pakri for the $109,784.30 worth of fuel which Pakri paid for and which were on board at the time of redelivery of the M/T FORTUNE on December 28, 2007. Savins Declaration ¶¶ 11 and 12, Savins Exh. 1, Clause 15 and Exh. 2, last page. And, most significantly, Ayres has caused the Court in Estonia to freeze Pakri's cash accounts. The amount frozen is $215,252. Savins Decl., ¶5. This would not be enough to fully secure Ayres even if Pakri could access those funds. Thus, Ayres actions have turned Pakri into a proverbial stone from which one cannot draw blood. Given Pakri's dire circumstances, equity requires denial of Ayres' motion.

## POINT V

### AYRES' CLAIMS ARE MERITLESS, SPECULATIVE OR UNRIPE

In weighing the equities this Court should also consider whether the claims asserted by Ayres have any merit and whether the largest, $987,500 for loss of future earnings, is speculative and unripe. Ayres' Counterclaim, ¶24.

The lack of merit and lack of ripeness of Ayres' counterclaims are critically evaluated in Savins Declaration ¶¶ 9 through 13. The Ayres' claims are patently specious in large measure.

A.   **Future Lost Earnings**

While Ayres may have a cause of action for future lost revenue in the future, the value, worth or amount of that claim is incalculable because the circumstances that may produce a compensable loss of revenue have not occurred. Ayres is not out of pocket. Yet it pleads with this Court to put Pakri out of pocket in an admittedly speculative amount. See Ayres' Counter-claim ¶ 24 (Ayres' New York attorney verifies that the $987,500 is a "best estimate"). The Supplemental Rules require verified complaints for a reason. No one can verify that which has not happened. One cannot verify future events. The requirement for verification ought to automatically weed out unripe, speculative claims. This is a classic example. Ayres has not yet sustained any loss of future earnings. It may and it may not. Given the uncertainty of the future, the scales of justice are not so out of calibration that Pakri should be obliged to escrow almost $1 million (assuming it has that much) solely to secure the remote possibility that Ayres might sustain actual losses in the future. The equities do not justify such crippling one-sidedness in the face of an inchoate claim. *Greenwich Marine, Inc. v. S.S. Alexandra,* 339 F.2d 901, 905 (2d Cir. 1965)("[t]he prematurity objection has been ignored only in isolated situations under peculiar factual circumstances."). Ayres' loss of future earnings claim is simply not ripe. *U.S. Maritime Services, Inc. v. Trade Ventures, Inc.*, No. 98-0499 Section "C", 1998 U.S. Dist. LEXIS 10608, at *6 (E.D. La. July 8, 1998).

B.   **O.W. Bunker Charter**

Mr. Savins explains in ¶9 that Ayres' claim for lost revenue during the period January 21 through February 21, 2008 simply does not compute. Pakri would have paid $13,000 per day. Ayres earned about $20,000 per day according to ¶16 of the verified counter-claim. Ayres has no loss. District courts have an obligation to scrutinize counterclaims to determine whether "the

counterclaim is so frivolous or so lacking in merit that the court can only conclude that the counterclaim was advanced solely to secure a negotiating advantage over the defendant." *Titan Navigation, Inc. v. Timsco Inc.*, 808 F.2d 400, 404 (5th Cir. 1987). *See also, North Offshore AS v. Rolv Berg Drive AS*, 07 Civ. 3095 (SHS), 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y. 2007).

C.  **No Unpaid Fuel Invoices**

In Savins Declaration, paragraph 12, Mr. Savins denies that there are $399,581.07 of unpaid fuel invoices. Indeed, the amounts alleged in paragraph 25 of the counterclaim do not match any invoice. Savins Exh. 2. This claim is frivolous.

D.  **Brokers' Commission - $9,750**

Special Provision VII of Savins Exhibit 1 provides that Ayres is to pay broker's commission. Ayres' claim is frivolous.

E.  **Fresh water**

In paragraph 26 of the counterclaim, Ayres sues for $880 for fresh water. Clause 6, line 89 of Savins Exhibit 1 requires Ayres to pay for fresh water. This claim is meritless..

F.  **Tank Cleaning**

Clause 45 of Savins Exhibit 1 allocates responsibility for tank cleaning. The counterclaim does not allege what circumstances impute responsibility to Pakri. The claim is facially insufficient.

G.  **Additional Tugs**

Ayres *verifies* that Pakri did not pay for "additional" tugs. Ayres cannot prove this allegation. Ayres fails to allege why additional tugs were required and whose responsibility under the charter was implicated. Most importantly, Ayres does not allege that it is out of pocket Therefore, Ayres is not entitled to or even in need of security

9

Accordingly, Ayres should be denied any additional security based on the lack of merit or prematurity of its numerous claims.

## POINT VI

### COURT LACKS JURISDICTION OF DISPUTES CONCERNING SECURITY

The purpose of Pakri's Rule B action was to obtain security for its claim against Ayres Shipping or its alter egos, the merits of which are to resolved by arbitration in London pursuant to agreement. One day prior to this Court's Rule E(4)(f) hearing on March 27, 2008, Ayres offered to arrange a bond to secure Pakri's claim in exchange for release of funds[1] of co-defendant Laskaridis(full amount of claim) and co-defendant Lavinia(about 90% of claim) that had been attached by Pakri in New York pursuant to this Court's Order of Maritime Attachment and Garnishment. The original bond was delivered to Pakri's London solicitors on March 27, 2008. The funds attached in New York were released. The security bond for a London arbitration award favoring Pakri provides that disputes concerning it are subject to English law and must be resolved by the High Court of Justice in London. The bond, issued by a third party, prohibits Pakri from publishing the text without a Court order for which Pakri prays. With the bond in hand, Pakri was in a position to dismiss the action against Ayres as this Honorable Court would not adjudicate the merits. Ayres' Rule B action against Pakri was still in place and Pakri's assets continued to be vulnerable to Ayres' Process of Maritime Attachment and Garnishment (08 civ. 0554).

The forum selection clause in the bond bars this Honorable Court from adjudicating any dispute about the security. Therefore, Ayres' motion to vacate the attachment is moot because the issuer of the bond is located in Great Britain where the security itself is also.

---

[1] Not three times the amount claimed as incorrectly stated by Ayres at p. 2 of its memorandum of law.

10

## POINT VII

### PAKRI'S RULE B COMPLAINT WAS PROPER

Ayres contends that Pakri engaged in an improper practice in Point III of its Memorandum arguing that Pakri had a legal obligation to file an answer and counterclaim in Ayres original Rule B action (08 Civ. 554) on the basis of Judge Leisure's decision in *Chiquita International Ltd. v. M/V BOSSE*, 07 Civ. 6786(PKL), 2007 U.S. Dist. LEXIS 25726 (S.D.N.Y. 2007). However, Pakri Tankers respectfully submits that the decision ignores certain basic tactical and legal facts.

First, there is nothing in Rule B or in Rule E that requires a party to confine itself to Rule E when the other party has filed an action first. For example, in *Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, 06 Civ. 15299(PKL), 2007 U.S. Dist. LEXIS 18827, at *6-7, (S.D.N.Y. February 26, 2007), Judge Leisure discussed with apparent equanimity of some of the advantages or disadvantages of a Rule B attachment versus a Rule E(7) counterclaim.

Second, the second plaintiff puts itself at a tremendous disadvantage by limiting itself to the remedy provided by Rule E(7) for counter-security. Rule E(7) only requires the first plaintiff to post counter-security if it has obtained security from the defendant/counter-plaintiff. Thus, the counterclaim yields nothing until the assets of the counterclaimant are attached. And many judges limit the amount of counter-security to the amount attached by the plaintiff. *See, Clipper Shipping Lines, supra,* and *Finecome Shipping Ltd. v. Multi Trade Enterprises AG*, 05 Civ. 6695 (GEL), 2005 AMC 2005 U.S. Dist. LEXIS 25761, at *6 (S.D.N.Y. October 24, 2005).

11

Third, a counterclaim is subject to an equitable evaluation by the district judge who has broad discretion. *North Offshore AS v. Rolv Berg Drive AS*, 07 Civ. 39055 (SHS), 2007 U.S. Dist. LEXIS 87648, *6 (S.D.N.Y. November 29, 2007). Thus, a clever litigant with a small claim would gain an enormous tactical advantage by rushing to the courthouse and filing first thereby limiting its own exposure to attachment of its assets to secure a much larger claim by the other party.

Fourth, a Rule E(7) counter-claimant must present its counterclaim in an adversary proceeding giving the plaintiff the opportunity to show lack of merit.

Fifth, the penalty for failure to post counter-security is, at worst, dismissal of the complaint. But, if the first plaintiff has a weak case but has won the race to the Courthouse, the first plaintiff has thereby thwarted any chance the other party with a meritorious case may have to obtain security for its claim. For example, in this case, Pakri made its written submissions to the arbitrators in London on February 20, 2008. Ayres has not submitted anything having obtained two extensions of time. Savins Decl. ¶14. Ayres has plenty of energy to attach and freeze Pakri's assets here and in Europe but it cannot bring itself to address the merits in the chosen forum. If Pakri had merely counterclaimed in Ayres action, the Court might have ordered Ayres to post some amount of counter-security but the court could not force Ayres to do so if Ayres chose not to. This Court could have then stayed Ayres prosecution of its arbitration claim. But that would play right into Ayres hands as it is making no effort to advance the resolution of the disputes in the London arbitration.

Sixth, the Rule E(7) procedure does not allow for the inclusion of other parties. In this case Pakri sued three additional defendants alleging that each was a dominating alter ego of

Ayres. *Wajilam Exports (Singapore) Pte. Ltd. v. Atlanta Shipping Ltd.*, 2006 A.M.C., 2744, 2006 WL 3019558(S.D.N.Y. 2006).

For all of these reasons the remedies provided by Rule B and E(7) are not identical and certainly not interchangeable.

Ayres aggressive tactics are those of a marauder. Ayres filed a Rule B action here, attached funds, stalled the London arbitration, arrested Pakri's fuel in Rotterdam and Antwerp, disrupted vessel operations, froze Pakri's bank accounts in Estonia, filed a counterclaim in a dismissed action while its own Rule B complaint was active, and then dismissed its own Rule B complaint. And now, simultaneously criticizes the propriety of this action and seeks to employ it as a vehicle for counter-security. All of these tactics are obsessive, inconsistent and totally unrelated to the merits

## CONCLUSION

This action having been dismissed, this Honorable Court should deny Ayres' motion.

Dated: New York, New York
April 21, 2008

                              Respectfully,
                              **Mahoney & Keane, LLP**
                                Attorneys for Pakri Tankers, OU

                        By:  /s/ Christopher H. Mansuy
                              111 Broadway, 10th Floor
                              New York, New York  10006
                              212-385-1422
                              212-385-1605