35-08/MEU/SL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
PAKRI TANKERS OU,

                                                                **08 CV 2424 (GBD)**

               Plaintiff,

  -against-

AYRES SHIPPING INC.,

               Defendant.
------------------------------------------------------x


**DEFENDANT'S REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF MOTION FOR COUNTER-SECURITY
OR, IN THE ALTERNATIVE, FOR VACATURE OF PAKRI'S
ATTACHMENT AND DISMISSAL OF ITS CASE**


                                                        FREEHILL HOGAN & MAHAR, LLP
                                                        Attorneys for Ayres Shipping Inc.
                                                        80 Pine Street
                                                        New York, NY 10005
                                                        (212) 425-1900
                                                        (212) 425-1901 fax


Of Counsel
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

NYDOCS1/303583.1

## **PRELIMINARY STATEMENT**

This reply memorandum is respectfully submitted in further support of the motion for counter-security pursuant to Rules E(7)(a) and E(2)(b) on behalf of Defendant AYRES SHIPPING INC. If counter-security is denied, then AYRES moves in the alternative for vacature of the attachment obtained by PAKRI TANKERS OU and dismissal of PAKRI's action.

## **ARGUMENT**

### Point I

### **PAKRI'S ATTEMPT TO DISMISS THE CASE WAS A NULLITY**

PAKRI attempts to make this case appear to be a race to the Courthouse which PAKRI contends it won. In this sense, its argument is deceptively simple: PAKRI argues that when it submitted its Notice of Voluntary Dismissal at 3:30 p.m. on April 3, 2008, AYRES had not yet answered or filed a motion for summary judgment, and PAKRI submits further that its submission tied the Court's hands, preventing the Court from considering anything else and the Court is thereby required by PAKRI's submission to deem the case concluded. For the reasons that follow, however, PAKRI is entirely incorrect, as is PAKRI's conclusion.

We turn first to PAKRI's submission of 3:30 p.m. on April 3, 2008, which was an attempted Rule 41(a)(1)(i) notice of voluntary dismissal. This submission was defective in several respects. First, PAKRI attempted to improperly file the notice on the Court's ECF system. Although termed a "Notice", a Rule 41 voluntary dismissal is actually a

stipulation signed by one party.[1]  As such, it is one of the documents under the ECF Rules of the Southern District of New York that is not to be filed by ECF and is instead to be submitted to the Orders and Judgments office of the Clerk of Court.  This is made clear from the "ECF Rules and Filing Instructions" found on the Southern District's website.  The website has a page called "Guidelines for Electronic Case Filing" which contains a section that provides as follows:

> Proposed orders, judgments and stipulations should **not** be submitted through the ECF system. Instead they should be sent by email to the Clerk.
> Counsel are directed to follow the <u>individual Judge's Rules</u> regarding the submission of courtesy copies to chambers.
>
> Proposed orders should be submitted in word processing format (WordPerfect or Word) rather than as a pdf document. Stipulations should be submitted in pdf format. Stipulations must contain all required signatures (the last person to sign can email it to the clerk). Email the proposed order, judgment or stipulation to:
>
> For cases assigned to a Manhattan Judge: <u>orders_and_judgments@nysd.uscourts.gov</u>

Based on the foregoing instruction, PAKRI should have emailed its Notice to the Clerk.  PAKRI, though, did not follow this instruction in this instance although PAKRI's counsel has followed these very procedures in other instances.

It is worthy of note that the Court's website under "ECF" also contains a Dictionary page, which sets forth all of the possible categories for filing of electronic documents and it is plain from a review of this Dictionary[2] that a "Notice of Voluntary Dismissal" is not among the choices presented.  Even if PAKRI's counsel was confused, therefore, as to whether or not the Notice he wished to file electronically was or was not a

---

[1] It is worthy of note that local practice in this District is that such notices are submitted to the Court to be "so ordered" before entry on the docket as a means of aiding the Court in its inherent power to control its calendar. *See, e.g.*, Landis v. North American Co., 299 U.S. 248, 253 (1936).

[2] We note that the categories are listed alphabetically to make them easy to find.

NYDOCS1/303583.1                                        2

"proposed order, judgment or stipulation",[3] the lack of a choice on the ECF system for filing a Notice of Voluntary Dismissal should have been a substantial clue that the document was not to be filed via ECF and should instead be emailed to the Clerk.

Even if PAKRI's counsel still had doubts, though, the same could have been resolved by – pursuant to the instructions found on the "ECF Rules and Filing Instructions" page of the website – calling the ECF helpdesk. That helpdesk would have informed PAKRI's counsel that the proper method of submitting the document was by email to the Clerk. In short, PAKRI's attempt to submit the Notice of Voluntary Dismissal via ECF was improper under the ECF rules and the non-conforming document was properly redirected. This submission by PAKRI was therefore a nullity.

PAKRI argues, though, that the Clerk lacks the power to "reject" an improper filing, raising Rule 5(d)(4). While PAKRI is correct that the Clerk may not reject a filing that is defective in form, PAKRI misses the point that the attempted filing was not actually **rejected** – PAKRI was merely told that its submission had been presented to the wrong desk within the Clerk's office and that it needed to re-submit its Notice to the proper desk, the Orders and Judgments Office. It is clear that the Clerk did not act improperly in this case: PAKRI's counsel was merely informed that it had presented its papers in the wrong place and that the papers needed to be sent to a different desk within the Clerk's office. An attorney cannot simply grab any person within the Clerk's office and demand that such person perform a function done by the Clerk's office. Attorneys should know which sub-office within the Clerk's office is responsible for each function and should direct papers accordingly. PAKRI's counsel was properly informed in a

---

[3] PAKRI's counsel submits – based solely on his own say-so – that the Notice did not fit within the category of a "proposed order, judgment or stipulation". Such argument is unsupported and incorrect.

NYDOCS1/303583.1                           3

prompt manner by the ECF desk that the submission needed to be sent elsewhere, and was told exactly how and where to file. The April 3, 2008 submission at 3:30 pm was a nullity because it was given to the wrong employee of the Clerk's office.

PAKRI claims to have re-filed with the Clerk's office by email at 3:49 pm the same day. PAKRI's submission, though, was defective here for another reason: it was not **signed** by an attorney of record under Rule 11(a). Rule 11(a) provides in pertinent part as follows:

> Every pleading, written motion, and other paper ***must be signed*** by at least one attorney of record in the attorney's name…***The court must strike an unsigned paper*** unless the omission is promptly corrected after being called to the attorney's or party's attention.

(Emphasis supplied.) PAKRI's April 3, 2008 submission of 3:49 pm was not signed, and accordingly the Court was forced under the Federal Rules to strike it. PAKRI's counsel should of course be familiar with Rule 11 and should have known to sign the notice. Again, PAKRI's counsel has correctly followed this procedure in connection with voluntary dismissals filed by him in other recent cases. His failure to sign the document in this case resulted in the striking of the document. PAKRI was given an opportunity to correct the defect, but by the time that PAKRI's counsel signed and re-submitted the document, AYRES had answered. Accordingly, the resubmitted Notice was invalid because of AYRES Answer.

Finally, we submit that this is not the type of situation where counsel's failure to comply with the rules should be excused as mere "mistake". PAKRI's counsel Mr. Mansuy has properly filed Notices of Voluntary Dismissal in other actions by submitting same by email to the clerk with his personal signature, which was thereafter "So

Ordered" by the judge. (See Ex. A to the Unger Affirmation.) Why Mr. Mansuy failed to follow a standard procedure which he himself has correctly employed in other cases in the very recent past is incomprehensible. To excuse his failure in this case – particularly given the equities involved – is not warranted. The equitable considerations are quite considerable because PAKRI's entire Complaint was improperly filed in the first place under Judge Leisure's decision in Chiquita International Ltd. v. M/V BOSSE, 518 F.Supp.2d 589 (S.D.N.Y. 2007) and Judge Keenan's similar prior decision in Rapture Shipping Ltd. v. Allround Fuel Trading B.V. Chemoil, 2006 U.S. Dist. LEXIS 60771 (S.D.N.Y. Aug. 28, 2006).[4] Additionally, and as set out previously, PAKRI's effort to discontinue the action was plainly an attempt to avoid the Court's instruction – to both sides – to resolve the problem caused by PAKRI's improper filing. Finally, as set forth more fully below, PAKRI's attempted discontinuance runs contrary to the settlement agreement between PAKRI and AYRES that led to AYRES' posting of a bond.

In the end, Mr. Mansuy's April 3, 2008 3:30 pm filing on behalf of PAKRI was to the wrong desk within the Clerk's office and was properly re-directed, while his 3:49 pm filing for PAKRI the same day was not signed in compliance with Rule 11 and was therefore properly stricken. His April 4 re-filing for PAKRI was knowingly improper in violation of Rule 11 in that the conditions required for such filing were not met because by the time of that submission, AYRES had already filed its Answer, rendering the Notice improper. The submissions by PAKRI were all improper and the case was not effectively dismissed by PAKRI under Rule 41.

---

[4] We note that PAKRI's brief argues – without support – that both Judge Leisure and Judge Keenan are wrong in this regard. No cases in support of PAKRI's position in this regard are offered.

NYDOCS1/303583.1         5

### Point II

### THE RIGHT TO VOLUNTARILY DISMISS DOES NOT PRECLUDE THE COURT FROM GRANTING AYRES' REQUESTED RELIEF

Even if, *arguendo*, the Court was to find that PAKRI's voluntary dismissal was valid, the same does not prohibit the Court from entertaining post-dismissal applications. As set forth in AYRES' moving papers, Rule E does not require a defendant to file anything in order to obtain counter-security. Rule E requires only that the defendant first "give security" and "assert a counter-claim". Here, AYRES has undeniably done both. Accordingly, this Court is free to order – and in order to maintain the goal of equality as concerns security, should order – PAKRI to provide counter-security for AYRES' claim.

The Court is likewise free to determine whether the attachment was valid (taking into consideration <u>Chiquita</u> and <u>Rapture Shipping</u>) in the first place. Rule E(4)(f) provides that

> [w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the attachment should not be vacated or other relief granted consistent with these rules.

AYRES was not required by Rule E(4)(f) to file an Answer in order to be in a position to challenge the attachment. Instead, all that was required was for PAKRI to attach property in which AYRES had an interest for AYRES to seek Rule E(4)(f) vacature. Indeed, as will be seen below, PAKRI and AYRES contemplated with respect to the restraint of AYRES' property that AYRES would challenge the attachment: the right to challenge the attachment before this Court was specifically preserved in the bond. A copy of the bond is attached to the Sach Declaration as Ex. A.

**Point III**

**THE STRATEGIC DIFFERENCES BETWEEN
RULES B AND E DO NOT JUSTIFY
PAKRI'S IMPROPER FILING**

PAKRI's counsel notes that there are strategic differences between being a Rule B plaintiff and a Rule E counter-claimant. This is true, as was noted by Judge Leisure in Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico, 2007 U.S. Dist. LEXIS 18827 (S.D.N.Y. February 26, 2007).

Judge Leisure, who has plainly looked at this issue very closely in several cases, also held, consistent with Judge Keenan in Rapture, that such a tactical difference to a party does not justify the improper use of Rule B. In Chiquita, Judge Leisure held that a party which properly should have been a counter-claimant under Rule E could not file its own separate Rule B application arising out of the same dispute.

PAKRI's counsel argues further that a Rule E counter-claimant is at a substantial disadvantage because it is limited in the amount of counter-security it can obtain for its counterclaim by the amount of security the Rule B plaintiff obtained. This argument is incorrect and relies entirely on outdated decisions. It is well-established that the primary goal of counter-security under Rule E is to place the parties "on an equality". Titan Nav., Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987). The decisions relied upon by PAKRI' counsel in support of its decision are out of date and we respectfully refer the Court to the cases cited in our moving brief on this point.

With regard to the argument concerning the inclusion of other parties, this is of course utter nonsense – the Court will or will not order the plaintiff to post counter-security, and if the plaintiff does not do so, vacature of the original attachment is among

the penalties the Court may impose. Here, PAKRI's "other parties" to include are merely entities which PAKRI alleges are alter egos of AYRES (which AYRES denies). There was no substantive allegation against any other party but AYRES, and PAKRI's sole purpose in naming the alleged alter egos was to widen the scope of parties against which it could attempt to restrain assets. Had PAKRI simply counterclaimed in AYRES action, an order would likely have issued granting it the counter-security it felt was needed. If PAKRI really needed security specifically from the alleged alter egos, PAKRI was fully able to bring a separate action against just those entities. Its action in bringing its own Rule B against AYRES, though, was knowingly improper under Chiquita and Rapture.

### Point IV

### PAKRI'S ARGUMENTS AGAINST COUNTER-SECURITY ARE INVALID

PAKRI raises two arguments against AYRES' request for counter-security: (a) that PAKRI is in dire financial straits and cannot provide security for AYRES' claims and (b) AYRES's claims are meritless, speculative or unripe. Neither argument is valid.

With respect to the first point, PAKRI offers no evidence to support the notion that it is in financial duress. While it is true that AYRES has restrained some of PAKRI's property in other parts of the world, the same does not mean that AYRES should not be entitled to secure its claims against PAKRI here. The only prohibition in this regard would be with respect to obtaining more security (globally) than AYRES' claims are worth. To date, AYRES has secured approximately $222,000 in New York, $150,000 in London, and approximately $37,000 in Antwerp. The total falls far short of AYRES' claim of $1,253,005.60. PAKRI, whose claims against AYRES are fully secured, should in turn fully secure AYRES by providing the difference. PAKRI's claim of financial

inability to post such counter-security does not preclude an order to this effect. Seaboard & Caribbean Transp. Corp. v. Hafen-Dampfshiffahrt, 329 F.2d 538 (5th Cir. 1964). To the extent that PAKRI maintains it is financially unable to provide such security, AYRES repeats its request to take discovery on this point, consistent with Maryland Tuna Corp. v. MS BENARES, 429 F.2d 307 (2d Cir. 1970) and Rolls Royce Ind. Power (India) v. M.V. FRATZIS M, 1996 A.M.C. 390 (S.D.N.Y. 1995) (Haight, J.).

PAKRI's contention that AYRES' claims are meritless, speculative or unripe is false, as is set forth in the accompanying Sach Declaration. More importantly, though, this Court is simply not in a position to judge such argument at this stage. *See, e.g,* Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761, *4 (S.D.N.Y. Oct. 25, 2005) (at this early stage in the proceedings, a court "should be reluctant to prejudge the merits of claims based essentially on the pleadings and a sparse record consisting of a few documents, in advance of any discovery. This is particularly so when the ultimate merits will be decided not by this Court, but by an arbitration panel in another country"); *see also* Palette Marine, Ltd. v. Pacific Ocean Resources Ltd., S.D.N.Y. 06 CIV 13141 (RLC) (*unreported*) (Jones J.).

Finally, concerning PAKRI's argument that the Court lacks jurisdiction to hear this dispute based on a forum selection provision in the bond, it is incorrect on this issue as well. The bond, with its terms and conditions, is provided as Ex. A to the Sach Declaration. The bond's forum selection provision concerns disputes regarding the bond itself, which mandates that any such disputes be heard before the High Court of Justice in London under English law. The instant dispute, however, does not concern the bond. It instead concerns an issue of American procedure, Rule B, which was employed by

PAKRI in order to obtain the bond it now holds. Indeed, the bond itself provides that it is subject to a finding in this Court as to whether or not PAKRI's attachment was valid in the first place.

## CONCLUSION

For all the foregoing reasons, PAKRI should be directed to provide counter-security to AYRES in the amount of AYRES' unsecured claims, or, in the alternative, PAKRI's attachment should be found to be invalid and the bond released.

Dated: New York, New York
April 30, 2008

> Respectfully submitted,
>
> FREEHILL HOGAN & MAHAR, LLP
> Attorneys for Defendant
> Ayres Shipping Inc.

By: _____
Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900 / (212) 425-1901 (fax)

NYDOCS1/303583.1                        10